# Exhibit C

Case 6:20-cv-00725-ADA   Document 33-3   Filed 12/11/20   Page 2 of 15
Case 6:19-cv-00432-ADA   Document 107   Filed 02/19/20   Page 1 of 54

1

```
 1                    UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF TEXAS
 2                          AUSTIN DIVISION

 3   INTELLECTUAL VENTURES,  ) Docket No. A 19-CA-1075 ADA
     LLLC                    )
 4                           )
     vs.                     ) Austin, Texas
 5                           )
     VMWARE, INC.            ) January 31, 2020
 6   ------------------------------------------------------
                      UNITED STATES DISTRICT COURT
 7                     WESTERN DISTRICT OF TEXAS
                            WACO DIVISION
 8
     PARUS HOLDINGS, INC.    ) Docket No. A 19-CA-432 ADA
 9                           )
     vs.                     ) Waco, Texas
10                           )
     APPLE, INC., ET AL      ) January 31, 2020
11
                       TRANSCRIPT OF MOTION HEARING
12                BEFORE THE HONORABLE ALAN D. ALBRIGHT

13   APPEARANCES:

14   For Intellectual        Mr. Jonathan DeBlois
     Ventures:               Mr. Robert R. Gilman
15                           Prince, Lobel, Tye, LLP
                             One International Place
16                           Boston, Massachusetts 02110

17                           Mr. Derek T. Gilliland
                             The Sorey Law Firm
18                           109 West Tyler Street
                             Longview, Texas 75601
19
     For Parus Holdings:     Mr. Andrew H. DeVoogd
20                           Mr. Michal J. McNamara
                             Mintz, Levin, Cohn, Ferris,
21                           Glovsky and Popeo, P.C.
                             One Financial Center
22                           Boston, Massachusetts 02111

23   For VMware, Inc.:       Ms. Katherine Kelly Vidal
                             Winston & Strawn, LLP
24                           275 Middlefield Road, Suite 205
                             Menlo Park, California 94025
25
```

*LILY I. REZNIK, OFFICIAL COURT REPORTER*
*U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)*

---

```
 1   (Appearances Continued:)

 2   For Apple, Inc.:        Ms. Bita Rahebi
                             Morrison & Foerster, LLP
 3                           707 Wilshire Boulevard,
                             Suite 6000
 4                           Los Angeles, California 90017

 5                           Mr. J. Stephen Ravel
                             Kelly, Hart & Hallman, LLP
 6                           303 Colorado Street, Suite 2000
                             Austin, Texas 78701
 7
     For Google, LLC:        Mr. Darin W. Snyder
 8                           O'Melveny & Myers, LLP
                             Two Embarcadero Center,
 9                           28th Floor
                             San Francisco, California 94111
10
                             Mr. Stephen Burbank
11                           Scott, Douglass, McConnico
                             303 Colorado Street, Suite 2400
12                           Austin, Texas 78701

13   For Samsung Electronics: Ms. Victoria E. Maroulis
                             Quinn, Emanuel, Urquhart, Oliver
14                           & Hodges, LLP
                             555 Twin Dolphin Drive, 5th Floor
15                           Redwood Shores, California 94065

16   For Amazon.Com, Inc:    Mr. Barry K. Shelton
                             Shelton Coburn, LLP
17                           311 RR 620 South, Suite 205
                             Austin, Texas 78734
18
                             Mr. Ravi Ranganath
19                           Fenwick & West, LLP
                             801 California Street
20                           San Francisco, California 94041

21   Court Reporter:         Ms. Lily Iva Reznik, CRR, RMR
                             501 West 5th Street, Suite 4153
22                           Austin, Texas 78701
                             (512)391-8792
23

24

25   Proceedings reported by computerized stenography,
     transcript produced by computer.
```

*LILY I. REZNIK, OFFICIAL COURT REPORTER*
*U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)*

---

```
08:59:13   1          THE CLERK:  Motion hearing in Civil Actions
08:59:18   2  1:19-CV-1075, styled, Intellectual Ventures I and II, LLC
08:59:23   3  vs. VMware, Incorporated, Civil Case No. W-19-CV-432,
08:59:29   4  styled Parus Holdings, Incorporated vs. Apple,
08:59:33   5  Incorporated, and Civil Action No. W-19-CV-612, styled
08:59:40   6  Gabriel De La Vega vs. Microsoft Corporation.
08:59:44   7          THE COURT:  Good morning, everyone.  All my
08:59:47   8  favorite lawyers in one place.  How lucky can I get.  I
08:59:52   9  shouldn't even get paid to have to work today.
08:59:55  10          If you all would be so kind as to start off and,
08:59:57  11  I guess, if you -- we can go in the order that Suzanne
09:00:01  12  just called the cases.  We'll start with IV vs. VMware,
09:00:05  13  Inc., and if the lawyers would address and identify
09:00:08  14  themselves.  Josh is already telling me something I need
09:00:18  15  to do.  So I try and do everything that Suzanne and Josh
09:00:23  16  tell me to do.
09:00:24  17          So if I could hear from the IV lawyers and then,
09:00:26  18  from the lawyers for VMware.
09:00:30  19          MR. GILLILAND:  Your Honor, Derek Gilliland on
09:00:32  20  behalf of IV, and with me today is Bob Gilman and John
09:00:36  21  DeBlois.  And also in the gallery is representative of IV
09:00:39  22  Chuck Ebertin.  We're ready to proceed.
09:00:42  23          THE COURT:  And, Mr. Gilliland, who will be
09:00:43  24  speaking on y'all's on behalf?
09:00:47  25          MR. GILLILAND:  Mr. Gilman will be arguing for
```

*LILY I. REZNIK, OFFICIAL COURT REPORTER*
*U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)*

---

```
09:00:48   1  IV.
09:00:48   2          THE COURT:  Mr. Ravel, your at least up front.
09:00:51   3  Or.
09:00:51   4          MR. RAVEL:  I'm in the next case, Parus against
09:00:53   5  Apple.  And for Apple is Bita Rahebi and me.  We'll be
09:00:57   6  splitting the argument.  And our client, Natalie Pous, in
09:01:00   7  from Cupertino.
09:01:01   8          THE COURT:  And immediately behind you is?
09:01:03   9          MS. VIDAL:  Kathy Vidal.  I'm here with William
09:01:06  10  Logan, my colleague, representing VMware.  And in the
09:01:09  11  gallery is my client, Danielle Coleman, from VMware.
09:01:11  12          THE COURT:  And, Ms. Vidal, who will be speaking
09:01:15  13  on behalf of VMware?
09:01:16  14          MS. VIDAL:  I will, your Honor.
09:01:17  15          THE COURT:  Very good.
09:01:18  16          Okay.  Well, then, let's start with that case.
09:01:19  17  Before we hear from the lawyers, let me tell you a couple
09:01:22  18  of things that you probably have all heard me say in the
09:01:26  19  past about these general issues.  More notes?  Okay.
09:01:35  20  Suzanne tells me there's an attorney I need to have sworn
09:01:36  21  in.  If that's true, just let me know whenever that case
09:01:40  22  comes up, and I'll be happy to do that.
09:01:42  23          Couple of things I just generically feel about
09:01:48  24  the arguments on infringement, contributory infringement,
09:01:53  25  willful infringement, and some of the others, in terms of
```

*LILY I. REZNIK, OFFICIAL COURT REPORTER*
*U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)*

Case 6:20-cv-00725-ADA   Document 33-3   Filed 12/11/20   Page 3 of 15
Case 6:19-cv-00432-ADA   Document 107   Filed 02/19/20   Page 5 of 54
5
Case 6:19-cv-00432-ADA   Document 107   Filed 02/19/20   Page 7 of 54
7

**Page 5:**

```
09:01:55   1   notice.  Number one is, I don't -- you know, I don't feel
09:02:02   2   like -- I'm not often going to be persuaded by an argument
09:02:06   3   that -- I'm just picking out until I'm not even sure --
09:02:12   4   I'll pick on anyone who's here, Microsoft or anyone.  The
09:02:17   5   fact that they may have gone and gotten a patent and
09:02:20   6   somewhere in one of those patents, they identify the
09:02:24   7   patent that is being is asserted, that's not going to be
09:02:28   8   good enough to me for actual notice.  I think there
09:02:35   9   actually needs to be some kind of formal notice.  And it
09:02:41  10   might not have to be the old-fashioned send a letter,
09:02:43  11   notice, or anything like that, but there actually needs to
09:02:46  12   be some notice of an awareness of the patent for the
09:02:50  13   period to begin running.
09:02:52  14           That being said, I know that many on the
09:02:57  15   plaintiff's side of the bar would be concerned, you know,
09:03:00  16   about the information they have when they file pleadings,
09:03:06  17   their ability to do this.  And if they don't make the --
09:03:09  18   if they don't make the accusation in the initial pleading,
09:03:13  19   a fear that they won't be able to make the accusation.
09:03:17  20           I want to ensure everyone in here that the way I
09:03:20  21   see it is, there will be a period of time after the
09:03:26  22   Markman, once the discovery begins, where it will be a
09:03:32  23   relatively short period of time, probably about three
09:03:35  24   months, but you will -- the plaintiffs will have a
09:03:39  25   baked-in period of time in every case where they can take
```

**Page 6:**

```
09:03:42   1   discrete discovery on the issue -- these specific issues,
09:03:46   2   and if they determine that there was knowledge of the
09:03:51   3   patent, then leave will be given -- granted very liberally
09:03:56   4   and allow -- to allow the plaintiffs to amend their
09:04:01   5   pleadings, as long as they get it done quickly enough
09:04:04   6   during the discovery period of time to allow additional
09:04:07   7   discovery to take place on behalf of the defendants.
09:04:10   8           But I'm not going to be receptive to defendant
09:04:15   9   saying, they should have pled it originally because we
09:04:17  10   have a lot of lawyers here who are unhappy that it was
09:04:20  11   pled in the initial pleadings.  And so, I'm thinking
09:04:24  12   that's the better way to do it.
09:04:26  13           So, Mr. Gilman, having -- or, actually, I guess,
09:04:29  14   Ms. Vidal, it's your -- it will be y'all's motions, but
09:04:32  15   that's the context I see all in this is sort of a
09:04:36  16   balancing of issue.  And I will tell you that there may be
09:04:42  17   slightly more weight on the plaintiff's side to explain to
09:04:47  18   me why it makes a difference that you all are able to
09:04:50  19   maintain an accusation or an allegation of willfulness or
09:04:56  20   the other issues that we're here for.
09:05:01  21           If you know that I'm going to give you the
09:05:04  22   opportunity to -- Mr. Gilman, I'm sorry, I'm picking on
09:05:05  23   you.  I'm looking at you, but it's true for all the
09:05:07  24   plaintiffs.  As long as you are aware that I'm going to
09:05:11  25   make -- give you the opportunity to establish, for
```

**Page 7:**

```
09:05:14   1   example, willfulness and give you an opportunity to amend
09:05:17   2   your pleadings, one of my favorite sayings when people
09:05:23   3   argue in front of the Supreme Court is, I'm not sure it's
09:05:25   4   worth the candle.  I'm not even sure I know exactly what
09:05:28   5   that means, but it's a cool phrase, and I think it applies
09:05:32   6   here.  I'm not sure why it's worth a candle to be fighting
09:05:35   7   over all this.  So that's my general perspective.
09:05:39   8           So with all that background, Ms. Vidal.
09:05:42   9           MS. VIDAL:  Thank you, your Honor.  With that
09:05:45  10   background, I believe I can rest.
09:05:47  11           THE COURT:  You are probably pretty close to it.
09:05:50  12   Really, what I'm most interested in and the reason I set
09:05:53  13   the hearing in this manner and have as many of these cases
09:05:57  14   as possible is, I thought, you know, my perspective --
09:06:01  15   getting my general perspective out to really good
09:06:04  16   plaintiff's lawyers, to really well-established
09:06:08  17   plaintiff's groups like Intellectual Ventures, really good
09:06:14  18   defense lawyers.  Some of my all-time favorites are
09:06:16  19   sitting over here.
09:06:16  20           And I guess I can't say Stephen Burbank is my
09:06:20  21   favorite clerk since Josh is sitting in front of me, but
09:06:23  22   I'll say that he was my favorite former clerk.
09:06:27  23           But part of the reason of having this many people
09:06:29  24   attend -- and it's great the corporate representatives are
09:06:33  25   here -- is to get across my general philosophy.  So, you
```

**Page 8:**

```
09:06:38   1   know, frankly, it might be better for me to hear from Mr.
09:06:40   2   Gilman, after everything I've said, about what his
09:06:43   3   thoughts are about what IV would like to do unless you
09:06:46   4   have something you'd like to say.
09:06:47   5           MS. VIDAL:  If you'd like me to create a record
09:06:49   6   on the five patents, I'm happy to, but if it's --
09:06:52   7           THE COURT:  We've been through all of them.  Josh
09:06:54   8   and I have spent a lot of time getting ready for this
09:06:57   9   hearing, and so, I don't think it's necessary for the
09:06:59  10   record; and it won't help me because Josh and I have gone
09:07:03  11   -- we've gone through all the stuff pretty carefully.
09:07:06  12           MS. VIDAL:  And, your Honor, one other thing.
09:07:08  13           THE COURT:  Yes, ma'am.
09:07:08  14           MS. VIDAL:  Your chambers brought the Romag
09:07:11  15   decision to our attention.  Is there something that you
09:07:12  16   wanted us to address on that, or was that for other
09:07:15  17   defendants and plaintiffs?
09:07:16  18           THE COURT:  No.
09:07:16  19           Generally speaking, I was listening to the oral
09:07:21  20   arguments and I -- and I worried about sending it out
09:07:25  21   because at least some you would say he doesn't even
09:07:28  22   realize it's a trademark case and I did.  And so, I get
09:07:32  23   that.  But when I heard, I think it was, Justice
09:07:37  24   Kavanaugh -- pretty sure it was Kavanaugh.  He was
09:07:40  25   articulating issues about what -- you know, for
```

willfulness, what willfulness means in terms of actual knowledge.

I think that that -- the way he was asking it, I don't know at least in his mind or some of the other justices that they would really see it much in difference in terms of the willfulness standard between the different IP groups. And it sounded to me like an indication from at least one justice what he thought actual knowledge might -- sufficient knowledge might be.

So I just wanted you all to have heard, you know, be aware of that, as well, because I think that's -- as a lower court, I think I should be informed by what those cases that are going on, and I thought you guys just ought to be aware of that.

MS. VIDAL: And I appreciate that. Since willfulness is not in our case, I'll leave that to the other counsel to address.

THE COURT: I mean, y'all have better lives than I do because you probably don't walk around listening to Supreme Court arguments in Waco. But that's what you have to do in Waco is listen to Supreme Court arguments. And so, I thought it was informative. No. That's it.

MS. VIDAL: Thank you, your Honor.

THE COURT: Mr. Gilman.

MR. GILMAN: Thank you, your Honor. Bob Gilman

for Intellectual Ventures.

Yeah, given the comments you made just now, I think we agree with you, it's not worth the candle. You know, frankly, our biggest concern through this motion practice is that we're able to obtain discovery. You know, we're going to get up here and argue that the better procedural way to handle this is to not dismiss it and deal with it. You know, as I think you recognized a little bit in the Parity case, it's the scope of the damage should be a factual issue.

But, really, if this is the way we're going to proceed but we're going to be able to get discovery on some items, even some things we discovered after filing the complaint on our own that lead us to believe that we might find something in VMware discovery that would show a notice date before the filing of the patent in suit. If we could get that discovery, I think we're fine.

THE COURT: And, actually, you said it better than I did, which is pretty typical of the way things go here.

But, actually, one of the things I was also trying to intimate was, I would not be receptive to having defendants tell plaintiffs, you can't ask discovery on the issues of willfulness or a factual underpinning of direct and indirect -- any of the others because you didn't --

it's not alleged, so we're not going to answer it. That would be very poorly received by me.

I think the much better way of doing it is to -- if you have a case where there is actual notice and I think there's one here where either, you know, we have that or close to that situation, then obviously that's fine.

But I think I agree with, you know, having done cases on both sides, I can appreciate why, for example, Apple doesn't want to have these allegations that may or may not be substantiated in the original complaint or even amended complaint; but at the same time, they should not to not have to provide you with discovery because you didn't plead it in the initial complaint or the amended complaint.

So yes, you would -- within reason, you would be -- have total access to discovery to establish these other claims.

MR. GILMAN: All right. That's appreciated, your Honor. If we walk out of here having that statement, then I think, you know.

THE COURT: I think I speak a fair amount, and that's one of the things I always try to get across is, that's my view on discovery. And for those of you who have not been in front of me before on other matters,

either, with regard to discovery, I'm a very hands-on judge. And my attitude is, for example, I'm not saying there will be a problem, but let's say -- I'm just using you because you're first up.

Were you to have sent something to Apple or someone else and, you know, my -- number one, my expectation is that you oughta do whatever you need to do to protect your client's rights and be as aggressive as that is. And I think, for example, Ms. Vidal ought to do the same for her client. I expect that. I know her very well and I know you and, you know, I know Mr. Gilliland. I expect it to be gracious, the way you treat each other, but vigorous, the way you do it.

So I don't -- I don't expect anyone to just say, oh, well, we probably shouldn't do this, but we will. I get that. Or vice versa. But if you have that issue, I also don't want, which I've had recently, where there are two weeks of back-and-forth e-mails saying -- you know, if you all can't get something resolved like this in a phone call, then just call -- I told them yesterday, I'm going to have shirts made up that say, call Dr. Yi. He probably wouldn't want me to do that.

But, you know, if you will just let us know after a shorter period of time, you can't get something resolved, so far, I think we've been able to get -- have

```
09:12:49   1   telephonic conferences within the next day or so.
09:12:54   2          And like yesterday, I lost an hour of my life,
09:12:57   3   but we got it resolved and I was happy when I left and
09:13:02   4   they were happy.  So no one in here should feel like
09:13:07   5   they're giving anything up by any ruling because we will
09:13:13   6   be available to resolve anything virtually within 24 hours
09:13:17   7   that you -- any dispute that y'all have.
09:13:19   8          MR. GILMAN:  Well, that's fantastic.  That's
09:13:21   9   appreciated and refreshing.  So.
09:13:22  10          THE COURT:  Well --
09:13:23  11          MR. GILMAN:  Appreciate that.
09:13:24  12          THE COURT:  You know, I've only been on the bench
09:13:26  13   a year and a half.  They haven't beaten the patience out
09:13:29  14   of me yet.
09:13:30  15          Is there anything else you wanted to say?
09:13:32  16          MR. GILMAN:  No, your Honor.
09:13:32  17          THE COURT:  Okay.
09:13:32  18          MR. GILMAN:  Thank you for the time.
09:13:33  19          THE COURT:  You bet.
09:13:39  20          So we are going to probably -- I can't say I
09:13:44  21   remember for each one, but, for example, Ms. Vidal, in
09:13:48  22   this case, would your clients be satisfied from what I've
09:13:53  23   said with a dismissal without prejudice of the claims with
09:13:58  24   which you're unhappy, with the understanding that
09:14:00  25   discovery's going to be taken at the appropriate time?
```

```
09:14:03   1          MS. VIDAL:  VMware would be very happy with that,
09:14:05   2   your Honor.  Thank you.
09:14:06   3          THE COURT:  And, Mr. Gilman, you're okay with
09:14:07   4   that?
09:14:08   5          MR. GILMAN:  Yes, your Honor.
09:14:08   6          THE COURT:  Okay.  Very good then.
09:14:12   7          Then next up -- and I think this is clear to
09:14:16   8   everyone in here.  I recognize most of the faces.  But,
09:14:19   9   you know, discovery will start immediately after the
09:14:22  10   Markman.  And with my Markmans, if you haven't been in
09:14:26  11   front of me before, there's one this afternoon.  In fact,
09:14:30  12   I know I'm babbling, but we are trying to start a new
09:14:35  13   process.
09:14:36  14          We sent out preliminary constructions yesterday
09:14:40  15   to the parties that are going to be at the Markman.  I'm
09:14:44  16   thinking that's what we'll do from now on.  Maybe not as
09:14:49  17   far in advance as we did in this case.  This hearing got
09:14:53  18   bumped, so we were a little ahead of time.
09:14:55  19          But you should start anticipating to have
09:14:58  20   preliminary constructions by 5:00 the day before so that
09:15:04  21   you know when you come in here.  They are only preliminary
09:15:07  22   constructions.  You know, the reason I'm giving them is, I
09:15:13  23   have found, a couple of times now, where we've given our
09:15:18  24   own construction and people said, we can live with that.
09:15:21  25   And so, it saved them the time of preparing for -- I don't
```

```
09:15:25   1   expect anyone to abandon their positions by having gotten
09:15:28   2   the preliminary constructions.  It's really, again, to
09:15:30   3   help you all out.
09:15:31   4          The discovery's stayed until the Markman, but for
09:15:34   5   example, the case today, at the end of the hearing today,
09:15:37   6   they will have the Markman constructions, and on Monday,
09:15:40   7   they can start discovery.  And so, on Monday, if they have
09:15:44   8   these issues, for example, that Mr. Gilman had, I would
09:15:47   9   expect them get discovery out immediately so that it can
09:15:52  10   get -- they know one way or the other, and they can get
09:15:54  11   their pleadings amended quickly enough to allow the
09:15:57  12   discovery in the rest of the case.
09:15:59  13          So the next case up is Parus, which is P-A-R-U-S,
09:16:08  14   Holdings vs. Apple.
09:16:13  15          Mr. Ravel and --
09:16:16  16          MR. DEVOOGD:  Drew DeVoogd for Parus, your Honor.
09:16:19  17          THE COURT:  Pleased to meet you, sir.
09:16:22  18          MR. DEVOOGD:  Likewise, your Honor.
09:16:24  19          MR. RAVEL:  I'll begin with a question, rather
09:16:26  20   than with an argument.  If the question is, would Apple be
09:16:29  21   satisfied with a dismissal without prejudice as to
09:16:32  22   willfulness, indirect infringement, and the request for
09:16:34  23   permanent injunction?  The answer to that question would
09:16:37  24   be yes, subject to cooperating in discovery immediately
09:16:42  25   after it starts and not filing any silly oppositions to
```

```
09:16:47   1   amended pleadings.
09:16:48   2          THE COURT:  And what do you say on behalf of
09:16:51   3   Parus?
09:16:52   4          MR. DEVOOGD:  I'd be happy to proceed in that
09:16:54   5   manner, your Honor.
09:16:55   6          THE COURT:  Okay.  Very good.
09:17:00   7          And then, do we have anyone for De La Vega vs.
09:17:12   8   Microsoft?
09:17:12   9          MR. SHELTON:  Yes, your Honor.  Barry Shelton.
09:17:13  10          THE COURT:  Oh, I'm sorry.  I assumed these other
09:17:15  11   Parus cases were all together.  I should ask for Google,
09:17:17  12   LG Electronics, Samsung and Amazon, whether there's any
09:17:20  13   difference in the positions you all would take like Mr.
09:17:24  14   Ravel did.  If so -- and if you would introduce yourselves
09:17:27  15   on the record, just make sure that we get it down, one at
09:17:30  16   a time, and who you represent.
09:17:32  17          MR. SNYDER:  Darin Snyder and Stephen Burbank,
09:17:35  18   along with our representative Timur Engin from Google,
09:17:39  19   LLC.  And then, Stephen Burbank and Darin Snyder for LG
09:17:42  20   Electronics, Incorporated and LG Electronics USA,
09:17:45  21   Incorporated.
09:17:45  22          THE COURT:  And what would your position be?
09:17:45  23   And, Lily, can you hear him from there or do you want him
09:17:45  24   to come up?
09:17:45  25          COURT REPORTER:  If you could move the mic closer
```

### Page 17

```
09:17:54   1   to you, please.
09:17:54   2              MR. SNYDER:  Good morning, your Honor.  Darin
09:17:55   3   Snyder with O'Melveny & Myers.
09:17:56   4              Granting our motion without prejudice to the
09:17:58   5   plaintiff later taking discovery would be acceptable to
09:18:03   6   Google and LG.
09:18:04   7              THE COURT:  Okay.  Yes, ma'am.
09:18:08   8              MS. MAROULIS:  Good morning, your Honor.
09:18:09   9              Victoria Maroulis, counsel for Samsung in the
09:18:14   10  Parus case.
09:18:14   11             And as with other defendants, we're satisfied
09:18:16   12  with dismissing the claims without prejudice and having
09:18:19   13  discovery later.  Thank you, your Honor.
09:18:21   14             THE COURT:  Okay.  Yes, sir.
09:18:25   15             MR. RANGANATH:  Good morning.
09:18:25   16             Ravi Ranganath, Fenwick & West, for Amazon.  And
09:18:28   17  our position is the same as the other defendants.
09:18:29   18             THE COURT:  And last, but not least, my favorite
09:18:33   19  Barry Shelton.
09:18:34   20             MR. SHELTON:  Your Honor, I'm local counsel
09:18:35   21  for Amazon.
09:18:35   22             THE COURT:  Okay.  Very good.
09:18:37   23             So does that take care of all of the Parus
09:18:40   24  Defendants?
09:18:41   25             MR. DEVOOGD:  Your Honor.
```

### Page 18

```
09:18:41   1              THE COURT:  Yes, sir.
09:18:42   2              MR. DEVOOGD:  If I may, Drew DeVoogd for Parus
09:18:45   3   Holdings.  I'm the attorney who would like your indulgence
09:18:49   4   to get sworn in.  Would you like to do that now?  We can.
09:18:52   5   Or reserve till after the hearing?
09:18:54   6              THE COURT:  Nothing would make me happier than to
09:18:56   7   swear you in right now, in front of all these people.  So
09:18:57   8   if you'll come up.
09:19:01   9              MR. DEVOOGD:  And I also have a couple of
09:19:03   10  additional comments.
09:19:04   11             THE COURT:  Okay.
09:19:05   12             MR. DEVOOGD:  At least with respect to the Google
09:19:07   13  case.
09:19:07   14             THE COURT:  Okay.  Let me swear you in; that way,
09:19:09   15  you're all official.  If you would raise your right hand
09:19:15   16  and repeat after me:
09:19:17   17             I do solemnly swear that I will discharge the
09:19:20   18  duties of attorney and counselor of this court faithfully.
09:19:28   19  That I will demean myself uprightly under the law in the
09:19:34   20  highest ethics of our profession.  I will support and
09:19:39   21  defend the Constitution of the United States.
09:19:45   22             Congratulations.
09:19:47   23             MR. DEVOOGD:  Thank you, your Honor.
09:19:47   24             THE COURT:  Now, let me hear what it is you would
09:19:49   25  like to add about Google, and then, I'll hear from
```

### Page 19

```
09:19:51   1   Google's counsel, if they need to say something.
09:19:54   2              MR. DEVOOGD:  Thank you, your Honor.  I just need
09:19:55   3   to retrieve my binder with your indulgence.
09:19:57   4              THE COURT:  Okay.
09:19:58   5              MR. DEVOOGD:  Thank you.
09:20:16   6              THE COURT:  And your -- is this the case where
09:20:19   7   there may have been some actual notice that you would like
09:20:21   8   to articulate?
09:20:23   9              MR. DEVOOGD:  That's correct, your Honor.  And I
09:20:24   10  also had some thoughts on the Romag Fasteners argument.
09:20:26   11             THE COURT:  Great.
09:20:28   12             MR. DEVOOGD:  It's more academic, so we can defer
09:20:30   13  that discussion, if you'd like.
09:20:33   14             THE COURT:  No.  I'm happy to have it.
09:20:35   15             MR. DEVOOGD:  Okay.  So as I heard that argument,
09:20:38   16  the issue that Justice Kavanaugh and, I believe, Justices
09:20:42   17  Kagan and Sotomayor were addressing is whether or not the
09:20:46   18  specific requirement for willfulness under the classic
09:20:53   19  principles of equity that the courts have applied in this
09:20:56   20  country for the past 200 years that are committed to the
09:21:01   21  district court's discretion within those parameters of
09:21:04   22  those classic equitable principles can be satisfied
09:21:09   23  without actual notice.
09:21:12   24             And from our perspective and the way I read the
09:21:15   25  cases in forming with respect to these particular
```

### Page 20

```
09:21:19   1   allegations under Halo, that line of cases does not
09:21:27   2   preclude a finding of willfulness, i.e., an award of
09:21:37   3   enhanced damages without actual notice under the rubric of
09:21:41   4   willful blindness.  And so, I can provide some additional
09:21:45   5   case citations.
09:21:45   6              THE COURT:  I think you and I are probably in
09:21:47   7   agreement on that.  And I think -- and Halo was kind of
09:21:49   8   touched on a little bit in those arguments, as well, and I
09:21:52   9   think they were trying to make that point.
09:21:54   10             MR. DEVOOGD:  Absolutely.  It's a sliding scale.
09:21:56   11             THE COURT:  Right.  I think so, too.
09:21:57   12             MR. DEVOOGD:  And you have the discretion to
09:21:59   13  assess the evidence before you and make a determination
09:22:01   14  based on that evidence.
09:22:02   15             THE COURT:  Yeah.  And I got the feeling, even
09:22:05   16  though he's like a thousand times smarter than me, that
09:22:09   17  Justice Kavanaugh was -- it was more of kind of not
09:22:12   18  academic but sort of a -- he's not really in the trenches
09:22:16   19  ever having to do the balancing himself.  He gets it once
09:22:19   20  the balancing has taken place.  And he was trying to find
09:22:22   21  whether or not there was a bright line.
09:22:23   22             MR. DEVOOGD:  I agree with that.
09:22:25   23             THE COURT:  And now, you want to take up a
09:22:27   24  specific issue with Google.
09:22:28   25             MR. DEVOOGD:  I do, your Honor.  And I guess I
```

would start with a question that I think applies to a number of the defendants, and that is whether post-suit allegations are permissible to keep the claims in.

So we can see that at least some of the defendants did not have actual notice. Now, setting aside the willful blindness aspect of it, but we can see that some of the defendants did not have actual notice as to some of the patents. They certainly are aware of them between the filing of the initial complaint and the filing of the amended complaint.

I know that there is some divergence in the district courts as to whether that post-complaint notice period is essentially in the case and adequately pled for purposes of the allegations that we're talking about here. So totally understand the Court's direction and admonition and the proposed compromise related to the pre-suit allegations.

I guess I just seek a little clarification as to your view on the post initial complaint time period, and I'd be happy to explain why I think that's appropriate.

THE COURT: Go ahead, please.

MR. DEVOOGD: Okay. So as I read the cases, basically the Eastern District of Texas and Delaware are nearly unanimous that post-complaint notice satisfies the knowledge requirement for both enhanced damages claims and

inducement and contributory infringement.

Now, some of the defendants have downplayed those cases and said they're against the weight of precedent. From my perspective, I would argue that you have two of the busiest patent dockets in the country with judges who see these patent cases all the time, and I think it would behoove us to give due weight to the cases coming out of those districts. I think there's at least a dozen in Delaware and nearly that many in the Eastern District of Texas.

So with that, I can.

THE COURT: Let me hear from Google or anyone else who wants to argue that.

Mr. Snyder.

MR. SNYDER: Good morning, your Honor. Darin Snyder of O'Melveny Myers on behalf of Google and LG. Which of those issues would the Court prefer I start with?

THE COURT: I would start with the what happens when Google finds out in the original complaint that they are infringing -- alleged to be infringing the 123 patent. Does that satisfy post that date a claim of willful infringement?

MR. SNYDER: It should not, your Honor.

As the Court said in M & C Innovations, that's a

situation that exists in literally every patent infringement case. And thus, notice provided by the complaint does not remove a case from a garden-variety patent infringement case to the kind of case that warrants enhanced damages, which is what Halo in the Supreme Court said is required for that kind of award. It has to be something else. It has to be something that's characteristic of a pirate.

Likewise, for indirect infringement, whether it's contributory infringement or inducing infringement, the mere notice provided by a complaint shouldn't provide that necessary knowledge and intent because merely continuing that conduct after you've been sued doesn't provide that knowledge of or intent to infringe the patent that is required for either of those types of indirect infringement.

THE COURT: Well, let me take a step just short of that, which is, it seems to me that your arguments are more on the merits of what -- as opposed to why should I now allow it to be pled. What, again, in the -- is it worth the candle but why -- how is Google harmed, for example, if the allegation is made that anything post notice in the original complaint, an allegation is made that the conduct subsequent to that is willful.

Are you saying, should the Court as a matter of

law just say that can never happen? Why wouldn't it be the wiser course -- not the happier course for Google, but why wouldn't it be the wiser course for the Court to allow the allegation to be made and discovery taken, whatever else happens, and then, the issue can be resolved, if you're right with respect to it being a matter of law, on a summary judgment at the time summary judgment -- as opposed to at this juncture?

MR. SNYDER: There aren't any disputed facts about the knowledge that is provided by the complaint. And we believe that as a matter of substantive law, the knowledge merely provided by the complaint can't provide the knowledge and intent necessary to satisfy the willfulness or indirect infringement elements.

That literally occurs in every case. I'm not sure, your Honor, what discovery the plaintiff would need to take were you, in fact, served with a complaint. Yes, we were served with a complaint. We're here today. So Google is obviously aware of the allegation. But that does not remove this case or any other case because the knowledge would be identical in every other case from the realm of a garden-variety patent litigation to the realm of behavior characteristic of a pirate that shows intentional misconduct that should justify an award of willful or exemplary damages.

```
09:28:53   1          So the damage that's done to Google is the
09:28:56   2   exposure that's created merely by those allegations.  And
09:28:59   3   as the Court indicated this morning, the presence of those
09:29:03   4   allegations when there is no factual basis for them is
09:29:06   5   problematic.  Likewise, the presence of those allegations
09:29:09   6   when as a matter of law, they should not be sufficient is,
09:29:13   7   likewise, problematic.
09:29:15   8          THE COURT:  So if -- would it be your position
09:29:20   9   that if I were to say I'm not going to dismiss the tranche
09:29:25  10   of willfulness claims that start with the filing of the
09:29:29  11   original complaint, would that be something that could be
09:29:32  12   taken up -- it would be sufficiently final, it could be
09:29:37  13   taken up in interlocutory appeal?
09:29:39  14          MR. SNYDER:  The Court could fashion a ruling
09:29:42  15   that could do that.  I'm not sure that -- my imagination
09:29:48  16   isn't broad enough to say categorically, there will never
09:29:52  17   be a situation in which post-complaint conduct could
09:29:56  18   justify a willfulness award.  There may be such a
09:29:59  19   situation, and that can be treated by your Honor and this
09:30:02  20   court exactly the same way as pre-suit notice.
09:30:06  21          If they take their discovery and they believe
09:30:08  22   that they have justification for amending their complaint,
09:30:12  23   they can timely bring that to your Honor if the parties
09:30:15  24   don't stipulate to it.
09:30:17  25          THE COURT:  And my only other question is -- and
```

```
09:30:21   1   the reason I asked about the interlocutory appeal is, is
09:30:28   2   this something that would be better -- rather than just
09:30:30   3   having district judges in the courts in Delaware, in the
09:30:34   4   Eastern District, and perhaps me deciding, wouldn't it be
09:30:38   5   better if the circuit told us?  I mean, it seems like a
09:30:40   6   pretty bright-line rule that one oughta.
09:30:45   7          MR. SNYDER:  I am sure that getting direction
09:30:47   8   from the Federal Circuit would help resolve the known
09:30:49   9   conflict among the districts.  Plaintiff's counsel is
09:30:51  10   correct that there are some courts in this country that
09:30:54  11   will allow allegations of willfulness or indirect
09:30:57  12   infringement to go forward, based on the notice provided
09:30:59  13   by the complaint.
09:31:00  14          That is inconsistent with the decisions of this
09:31:04  15   district so far, but I do acknowledge that there is a
09:31:08  16   difference.
09:31:09  17          THE COURT:  I mean, that's really the problem I'm
09:31:11  18   having is, it doesn't really seem like -- I mean, I get
09:31:15  19   that we all have -- we have to make the initial decision.
09:31:18  20   But it would be nice for the circuit to tell us one way or
09:31:22  21   the other.
09:31:22  22          MR. SNYDER:  It would be good to have that
09:31:25  23   direction, your Honor, but the kind of plan that the Court
09:31:27  24   outlined at the beginning of this hearing assumes that
09:31:31  25   notice provided by the complaint is insufficient.  Because
```

```
09:31:34   1   in each one of these cases, whether we're talking about
09:31:36   2   the preceding case by Intellectual Ventures, or the other
09:31:40   3   Parus cases, or the case that's going to follow us, there
09:31:43   4   was notice to the defendants provided by the complaint.
09:31:47   5          So if it's not going to be dismissed -- there
09:31:50   6   would not be a basis for dismissing any of those cases
09:31:54   7   without prejudice, subject to amendment, if the Court is
09:31:57   8   going to allow mere notice provided by the complaint to
09:32:00   9   suffice.
09:32:05  10          THE COURT:  Anything else?
09:32:05  11          MR. SNYDER:  Nothing further, your Honor.
09:32:06  12          THE COURT:  Any response or anything additional?
09:32:10  13   Yes, sir.
09:32:11  14          MR. RANGANATH:  Good morning, your Honor.  Ravi
09:32:13  15   Ranganath for Amazon.
09:32:15  16          I just wanted to address one thing because I will
09:32:17  17   acknowledge that the rule does appear to be unanimous in
09:32:19  18   east Texas that notice -- their complaint filing is
09:32:23  19   sufficient.  I do not agree that it's the unanimous rule
09:32:26  20   of Delaware.  I think we cited in our papers an opinion
09:32:29  21   from Judge Connolly from this last year where he says the
09:32:33  22   complaint itself cannot serve as a basis for defendant's
09:32:36  23   actionable knowledge.  The purpose of a complaint is not
09:32:39  24   to create a claim, but to obtain relief for an existing
09:32:42  25   claim.  And that's the VLSI case out of Delaware.
```

```
09:32:46   1          So just wanted to note that even within
09:32:49   2   districts, there seems to be some split here.  So I would
09:32:52   3   hardly describe it as a unanimous rule of Delaware.
09:32:55   4          THE COURT:  And which Delaware judges have gone
09:32:58   5   the other way?
09:32:59   6          MR. RANGANATH:  I'm aware of, I believe, Judge
09:33:01   7   Andrews and possibly Judge Stark.
09:33:03   8          THE COURT:  Okay.
09:33:10   9          MS. RAHEBI:  Your Honor.
09:33:10  10          THE COURT:  Yes, ma'am.
09:33:10  11          MS. RAHEBI:  If I could address for Apple.
09:33:11  12          We agree with the law and it is mixed.  But I
09:33:14  13   would just say that under the not-worth-a-candle doctrine,
09:33:16  14   we will end up -- you know, once they take discovery, if
09:33:19  15   there's a case to proceed, at least for now, we can have
09:33:23  16   and have a simpler case until we get to the discovery
09:33:25  17   period, and we think it resolves this issue.  Thank you.
09:33:29  18          THE COURT:  Yes, sir.  Yes, ma'am.
09:33:32  19          MS. MAROULIS:  Your Honor, Victoria Maroulis,
09:33:35  20   counsel for Samsung.
09:33:36  21          The only willfulness allegations against Samsung
09:33:39  22   are based on both filing, meaning the notice of the
09:33:42  23   complaint.  So I just wanted to register agreement with
09:33:45  24   counsel for Google that to the extent the Court is
09:33:50  25   dismissing these claims without prejudice, the Court is
```

```
09:33:53   1   recognizing that the filing of the complaint is not
09:33:56   2   sufficient without any additional facts to constitute
09:33:59   3   basis for willfulness.
09:34:01   4         Thank you.
09:34:01   5         THE COURT:  Well, I think what I'm -- what I'm
09:34:05   6   wrestling with is that absent something additional to
09:34:11   7   that, I think that's probably right.  I don't know that
09:34:14   8   it's quite as bright a line as you're suggesting.
09:34:18   9         MS. MAROULIS:  Your Honor, there are a couple of
09:34:20  10   cases out there that I believe Parus cited, perhaps
09:34:27  11   Bio-Rad in Delaware or Bobcar.  In those cases, while it's
09:34:29  12   not very clear from the decisions exactly happened, it
09:34:31  13   appears that, in addition to the complaint, there were
09:34:33  14   some additional facts, a protracted licensing negotiation.
09:34:37  15   Some head-to-head competition of the facts that may take
09:34:41  16   it out of what counsel for Google referred to as
09:34:45  17   garden-variety willfulness claims.  That just because
09:34:47  18   you're sued, you are now willfully -- alleged to willfully
09:34:51  19   infringe.
09:34:51  20         THE COURT:  And you can answer this and anyone
09:34:52  21   else can, as well.
09:34:54  22         Should it make any difference whether or not the
09:34:58  23   patent that's being asserted is being asserted by a
09:35:01  24   competitor, rather than someone who is not a competitor,
09:35:03  25   with regard to -- in other words, again, I'm just making
```

```
09:35:07   1   this up.  Two names, Dell and HP, for lack of -- but if
09:35:14   2   Dell were to sue HP and give it notice -- once it had the
09:35:19   3   notice of the patent, should it make any difference in
09:35:22   4   terms of the willfulness determination the fact that HP
09:35:26   5   continued to compete with Dell and selling allegedly
09:35:31   6   infringing products, as opposed to situation where the
09:35:34   7   plaintiff is an entity who just owns the patent?
09:35:38   8         MS. MAROULIS:  Your Honor, I believe that that
09:35:41   9   alone does not make any difference with its competitors or
09:35:45  10   nonpracticing entity versus operating company.  What I was
09:35:48  11   referring to, what I think some of the cases that Parus
09:35:51  12   cites referred to is more situations where there's some
09:35:55  13   additional indicia of willfulness.  And it may be the case
09:35:58  14   that in the competitor cases, that occurs more frequently
09:36:02  15   because the companies monitor each other, they are in the
09:36:05  16   stream of commerce.  But it's going to depend on
09:36:08  17   case-by-case basis.
09:36:09  18         I agree with counsel for Google that as a
09:36:12  19   bright-line rule, filing a complaint is not enough.  One
09:36:15  20   of the cases defendants cited in their motions said that a
09:36:19  21   complaint is there to bring relief to a claim, not to
09:36:22  22   create a new claim.  And that's what pure allegations of
09:36:26  23   willfulness based on post-filing conduct are.  We're
09:36:32  24   creating a claim by just saying there is willfulness, and
09:36:34  25   that is the difference.
```

```
09:36:36   1         THE COURT:  Anything else from defense?
09:36:39   2         MS. MAROULIS:  Thank you, your Honor.
09:36:40   3         THE COURT:  Counsel.
09:36:46   4         MR. DEVOOGD:  Thank you, your Honor.
09:36:47   5         Before I address the substance of those
09:36:49   6   arguments, I neglected to introduce my colleagues and
09:36:53   7   client reps, if you'll allow me.
09:36:56   8         THE COURT:  That may be the worst mistake you
09:36:57   9   could ever make.
09:37:00  10         MR. DEVOOGD:  I was reminded of that, your Honor.
09:37:02  11         Michael McNamara is lead counsel and Courtney
09:37:05  12   Herndon is my colleague.  And also, Texas trial counsel
09:37:09  13   from Ward Smith & Hill, Johnny Ward is here, as well.
09:37:13  14   We've also got the CEO of Parus, Taj Reneau, and the GC,
09:37:17  15   Robert McConnell.
09:37:18  16         THE COURT:  Well, and let me take the time to
09:37:21  17   thank anyone who is here.  I don't know if it's
09:37:25  18   voluntarily, but more voluntarily than the lawyers who had
09:37:27  19   to come.  I think this is the best thing about our
09:37:35  20   judicial system is that you all -- it's -- everything's
09:37:38  21   done in public, and I think everyone oughta be here
09:37:41  22   measuring how I perform as well as how your lawyers
09:37:44  23   perform.  So it always heartens me when clients take the
09:37:49  24   time to attend hearings like this.  Specifically, with
09:37:53  25   respect to your client representatives, I welcome them to
```

```
09:37:56   1   Austin.
09:37:57   2         MR. DEVOOGD:  Thank you, your Honor.
09:37:57   3         THE COURT:  And so, if you'd like to continue.
09:37:59   4         MR. DEVOOGD:  Absolutely, your Honor.
09:38:00   5         And Mr. Snyder said something I thought was
09:38:03   6   noteworthy.  He said he could imagine a situation --
09:38:05   7         THE COURT:  That would be a first.  Sorry.
09:38:11   8         MR. SNYDER:  Thank you, your Honor.
09:38:12   9         MR. DEVOOGD:  I'll leave that one on the table,
09:38:14  10   your Honor.
09:38:14  11         He said he could imagine a situation in which
09:38:19  12   there could be some evidence supporting a -- an enhanced
09:38:25  13   damages award, based on post-complaint conduct, and that,
09:38:30  14   to me, is the point.  As the Court said in the Blitzsafe
09:38:37  15   case, the notice of the filing of the complaint, coupled
09:38:41  16   with a plea for enhanced damages, plausibly supports an
09:38:49  17   presence of an intentional redoubling of infringement
09:38:52  18   activity, which is just as plausible as the fact that
09:38:56  19   they've lawyered up and are going to fight the case
09:38:59  20   vigorously.
09:39:00  21         And it's not for the Court, at this point, at the
09:39:04  22   pleadings stage, to determine whether inferences that are
09:39:10  23   -- might be more plausible than not, or could be
09:39:15  24   improbable once evidence comes before the Court later,
09:39:19  25   should be tossed out at the pleadings stage.  And that's
```

**Page 33**

1  really the point on that, your Honor.
2       As to the purpose of the complaint, I know there
3  is case law, and counsel for defendants cited it,
4  suggesting that a complaint does not serve a purpose of
5  creating a new cause of action.  There's a recent case out
6  of Delaware from your colleague, Judge Connolly.  It's the
7  Boston Scientific vs. Nevro case.  And I can send the cite
8  to Dr. Yi after the hearing, if you'd like.
9       That case -- in that case, Judge Connolly notes
10 that Section 284 allows district courts to punish the full
11 range of culpable behavior.  And I'll just put a bookmark
12 there because I want to take us back to Halo because
13 that's a very important point.  But Judge Connolly went on
14 to say that in the majority of patent cases today -- and,
15 to be candid, our pleadings make the same, I think, error
16 in terminology of making allegation for a claim of willful
17 infringement.
18      But requests for enhanced damages under 284 are
19 not a claim for relief.  They're requests that the Court
20 exercise its discretion, based on all the facts and
21 circumstances before and after the evidence is adduced and
22 placed into the record as to whether enhanced damages are
23 appropriate.
24      Now, Mr. Snyder also said that those enhanced
25 damages are only appropriate if the defendant acts like a

**Page 34**

1  pirate.  But here's what the Halo court actually said.
2  The chief justice wrote that the sort of conduct
3  warranting enhanced damages has been variously described
4  as willful, wanton, malicious, bad faith, deliberate,
5  consciously wrongful, flagrant or, indeed, characteristic
6  of a pirate.  The disjunctive is important here.
7       Back to my earlier comments about the recognition
8  of Justices Kavanaugh and Sotomayor and Kagan during the
9  Romag Fasteners argument last week, culpable conduct
10 worthy of enhanced damages is a sliding scale.  And the
11 worst is an intentionally malicious pirate who goes out
12 seeking with actual knowledge of the patent in order to,
13 you know, undermine their competitors' advantage in the
14 marketplace, or something like that.  That's piracy and we
15 can agree on that.
16      But there are other flavors of culpable conduct
17 warranting enhanced damages.  So the point of that is that
18 the notice requirement is -- it serves one purpose, and
19 that is to put the defendants on notice of the existence
20 of a patent.  We're talking about actual notice here.  And
21 so, I don't see the difference, frankly, between me
22 sending a letter to Google saying, you infringe the 123
23 patent, or me filing a complaint, articulating in far
24 greater detail you infringe the 123 patent and here's why.
25      So with that, I'd like to turn to the

**Page 35**

1  Google-specific issues unless you'd like to hear from
2  defendants.
3       THE COURT:  Let me hear from anyone who wants to
4  stand up because I do have a couple of more questions.
5       Mr. Snyder, you might be the obvious person.
6       MR. DEVOOGD:  Thank you, your Honor.
7       THE COURT:  And I guess where I'm torn here is,
8  why since it's up to me to make this decision, correct,
9  about whether or not Google in this case acted -- whoever
10 it is, acted willfully.  It seems to me, if the case gets
11 filed, they give you the notice of the 123 patent, you
12 defend it vigorously and we go all the way through trial,
13 how is the system better off with me not just at the end
14 of trial -- regardless of whether Google wins or loses
15 because I will have gotten to -- if Google wins, then if
16 the issues goes away altogether.  I get that.  But if the
17 plaintiff wins, I would, at that point, then be able to
18 assess whether or not I thought that the defense that
19 Google raised was in good faith or not.  Presumably, it
20 would be.  You've tried it all the way through the case,
21 you've put on experts and all that.  And then, I don't
22 think one will be able to find willfulness as a result of
23 that.
24      I guess is the issue whether or not just
25 knowledge is sufficient?  Is that your point?

**Page 36**

1       MR. SNYDER:  Well, a few things, your Honor.
2       We know from the Supreme Court that knowledge of
3  the patent is not sufficient to award exemplary damages.
4       THE COURT:  Right.
5       MR. SNYDER:  There has to be knowledge of
6  infringement.  And that knowledge of infringement and that
7  conduct has to go far beyond mere knowledge of the patent
8  to what the Supreme Court described as willful, wanton,
9  malicious, bad faith, et cetera.  Those are serious
10 accusations, whether they're in the patent infringement
11 context or any other context.
12      So merely -- mere knowledge of the patent and a
13 mere accusation of infringement does not satisfy that
14 standard.
15      THE COURT:  And that's why -- I guess what I'm
16 saying is, so the likelihood of a competent judge finding
17 that you acted that way at the end of trial is pretty
18 remote, even if that allegation still exists.
19      MR. SNYDER:  And I guess that leads to my second
20 point, your Honor.  At the time that the complaint is
21 filed, that conduct post-complaint cannot exist because it
22 hasn't happened yet.  And we engage in all kinds of logic
23 games in the law, but we haven't yet flipped around the
24 passage of time that it goes in the other direction.
25      When the plaintiff signs the complaint, says here

is my good-faith belief of infringement, at that point, there can be no allegations of post-complaint conduct with knowledge of infringement that would raise to the level of justifying exemplary damages. And that' what lead to my comment --

THE COURT: Well, then, how could all these judges say that it does?

MR. SNYDER: I don't believe that they should, your Honor. I think that that is inconsistent with what the Supreme Court has said and that guidance. And we don't yet have guidance from the Federal Circuit on the Supreme Court in this narrow circumstances the Court has already pointed out. But that doesn't mean that that guidance wouldn't be forthcoming. And I think we can see the direction the wind is blowing, based on what the Supreme Court has said.

Halo made it very clear that you need something more than mere knowledge. Now, to be fair, the Supreme Court has also recognized that actual knowledge may not be required. There are some situations where willful blindness is satisfactory. But the Supreme Court is giving guidance on that, as well; and in that circumstance as it said in Global Tech, you still need to have a subjective belief and a high likelihood of infringement. Mere knowledge of the patent does not provide that.

So that was my point about in response to the Court's question, can they still perhaps come back to the Court and move to amend to add allegations of willfulness, based on post-complaint conduct? And my point there is not that that's always going to occur. My point is that there may be some universe in which that set of facts would lead the Court to allow them to make that amendment. It's probably unlikely. But is it theoretically possible? My imagination isn't big enough to completely exclude that possibility.

But merely going ahead and defending yourself after you've been accused of infringement should not be enough to provide that kind of exemplary damages or right to exemplary damages, which is what they're arguing.

This actually has consequence in the context of the Google case, your Honor, in this Google case. Of the two patents that are accused, one of those patents, the 431 patent, was something that was identified by Parus to Google during some licensing negotiations that occurred more than a decade ago, and the distinction between knowledge of a patent and knowledge or belief of infringement becomes very important in this context.

In '07, when that notice was provided, it was not in the context of saying, Google, we think you infringe this patent. It was, we have a portfolio of patents. We

think we'd like you to -- maybe you'd like to pay us some money for them. Here is one of many patents that we have. There was no allegation of infringement. And even the instrumentalities that are accused of infringement in this case didn't exist. In fact, they didn't exist for nine years.

So when Parus provided notice of the patent, they certainly didn't provide notice of infringement and no basis for Google to believe that it was infringing. And that is what is required for exemplary damages and that is what's absent. So even the mere -- the mere fact of notice of a patent doesn't provide the notice of infringement that I think is really required to make that next step and allow the case to proceed with an allegation of willful infringement that would justify exemplary damages.

THE COURT: Okay. Got it.

Counsel.

MR. DEVOOGD: Thank you, your Honor.

THE COURT: Yes, sir.

MR. DEVOOGD: Again, I want to emphasis that at the pleadings stage, whether an allegation is plausible is a binary determination. We don't get to weigh whether an inference is more likely or not or improbable or not. If it's plausible, it's plausible, and the pleading passes

muster under Twombly.

As to the notion that knowledge of infringement can't be conveyed by a complaint, our complaints in this case, and including the one against Google, are some 25 or 30 pages long, with 100 different discrete paragraphs making out detailed allegations, mapping the claims of the patents to the accused instrumentalities. So I'm not sure how that moves the needle for Mr. Snyder.

As to the specifics of the Google circumstance here, it was much more than just a discussion about licensing. So back in 2007 -- and this is laid out in the complaint -- representatives from Parus met with Google and made a presentation regarding their innovative technology and informed them of foundational patents in this voice recognition space. Among those patents, as Google now concedes, was the 431 patent, which is the parent of the 084 patent.

During that management presentation, Parus introduced Google to its business and made a detailed presentation about the technology and the patents. There's some very carefully worded language in the motion to dismiss where Google says, well, Google Assistant, which is the instrumentality of Google that we're pointing for at least some of the elements, didn't come into existence until 2016. But they made no mention of any

Case 6:20-cv-00725-ADA Document 33-3 Filed 12/11/20 Page 12 of 15
Case 6:19-cv-00432-ADA Document 107 Filed 02/19/20 Page 41 of 54
41
Case 6:19-cv-00432-ADA Document 107 Filed 02/19/20 Page 43 of 54
43

```
09:52:18   1   predecessor product like the Google Voice Search or Google
09:52:22   2   Now, which I believe -- this isn't in the papers, so take
09:52:27   3   it for what it's worth.  But based on our investigation,
09:52:31   4   Google Voice Search at least was rolled out a little over
09:52:35   5   a year after Parus made this technology presentation.
09:52:40   6           So from our perspective, there is no doubt, and
09:52:44   7   they concede it, that they had actual notice of the 431
09:52:49   8   patent at least as early as 2007.
09:52:53   9           With respect to notice of infringement, from our
09:52:55  10   perspective, it is a plausible inference that Google,
09:53:01  11   which is a highly sophisticated, well-heeled technology
09:53:06  12   company with much at stake in products that they roll out,
09:53:11  13   such as something like Google Assistant, which they're
09:53:16  14   touting all over the place as the next best thing in
09:53:19  15   voice-assisted technology, would not only be aware of,
09:53:28  16   based on their extensive technical diligence, which is
09:53:34  17   also alleged, that a team of both patent attorneys and
09:53:36  18   technical assets conduct detailed diligence not only on
09:53:41  19   the patents that Parus presented but the technology that
09:53:45  20   Parus presented.  And there's no rebuttal for that.
09:53:48  21           And in any event, you need to take those factual
09:53:51  22   allegations pled as true.  So the notion that it's somehow
09:54:04  23   implausible that Google could have been aware of
09:54:06  24   infringement of the 431 patent at least as early as 2007,
09:54:11  25   it could be true.  I don't know.  But that's not for us to
```

```
09:55:57   1           So unless you have any further questions, I'll
09:55:59   2   step down.  Thank you.
09:56:03   3           MS. RAHEBI:  Is it possible, your Honor, for me
09:56:04   4   to address on behalf of Apple?
09:56:05   5           THE COURT:  Sure.
09:56:05   6           MS. RAHEBI:  We agree with Google that it does --
09:56:07   7   the standard does require knowledge of infringement.  But
09:56:10   8   I wanted to point out when we're looking at a complaint
09:56:12   9   such as the one against Apple, there is no allegation that
09:56:16  10   we ever even heard of Parus, let alone its patents.
09:56:19  11           So what we're really dealing with is a complaint
09:56:21  12   that's the first time we're hearing that we are being
09:56:24  13   accused.  And we believe there's no basis, at that point,
09:56:27  14   to be, for instance, asserting willfulness.  And there's
09:56:31  15   nothing in Halo that suggests defending a patent suit
09:56:36  16   alone would rise to that egregious behavior.
09:56:39  17           And we would go back to this court's language and
09:56:41  18   standard in Parity Networks, which is looking at the time
09:56:43  19   of the filing of the complaint.  Thank you.
09:56:48  20           THE COURT:  Mr. Snyder.
09:56:50  21           MR. SNYDER:  Thank you, your Honor.
09:56:54  22           I'd like to start where plaintiff's counsel
09:56:57  23   ended.  Plaintiff's counsel argues that they should be
09:57:00  24   allowed to make allegations of willfulness because a
09:57:03  25   company of Google's size and sophistication with, quote,
```

```
09:54:14   1   decide right now.  The point is that a reasonable
09:54:18   2   inference can be drawn, based on the allegations in the
09:54:20   3   complaint, that Google had notice not only of the 431
09:54:25   4   patent but, also, of its infringement of that patent.  So
09:54:28   5   that's the 431.
09:54:29   6           As to the child, there is case law standing for
09:54:32   7   the proposition that a plaintiff cannot rely on a pending
09:54:40   8   patent application standing alone for purposes of the
09:54:48   9   notice requirement.  I concede that.  But there's a whole
09:54:50  10   lot more here in the allegations that we've pled taken as
09:54:54  11   true, drawing all reasonable inferences in our favor as we
09:54:59  12   must.
09:55:01  13           For all of the reasons I've already articulated,
09:55:03  14   it almost defies logic to suggest that a company with this
09:55:08  15   much at stake in the space as Google would simply ignore
09:55:14  16   or not investigate the pending applications of these
09:55:20  17   foundational patents flowing from this 2004 meeting.
09:55:24  18           Now, whether or not that's a probable allegation,
09:55:29  19   whether or not we're going to be able to prove that up,
09:55:32  20   that doesn't matter.  What matters for today is whether or
09:55:39  21   not the allegations we've made support a plausible
09:55:42  22   inference.  And we respectfully submit that based on the
09:55:45  23   facts pled, that is, in fact, a plausible inference,
09:55:52  24   which, therefore, means we pass muster under the pleadings
09:55:57  25   standard.
```

```
09:57:07   1   so much at stake must have known about these patents.  As
09:57:12   2   I understood it, that was exactly the point of the Court's
09:57:15   3   initial comments that they would be allowed to take
09:57:19   4   discovery on this issue.  And that's exactly the kind of
09:57:21   5   thing that should be determined with real facts, as
09:57:24   6   opposed to speculation, which is all that exists right
09:57:29   7   now.
09:57:29   8           The only evidence that they have of any knowledge
09:57:32   9   is this presentation that was made in 2007, long before
09:57:37  10   any of the accused instrumentalities even existed, and
09:57:40  11   that relates only to one patent.  So if that is the basis,
09:57:44  12   and it seems that it is, then that feeds precisely into
09:57:48  13   this court's suggested approach, which is to dismiss these
09:57:51  14   allegations, give the plaintiffs an opportunity to take
09:57:54  15   discovery, and if they have facts to support these
09:57:57  16   allegations, then they can put them in an amended
09:58:00  17   complaint and the case can proceed.  So that's the first
09:58:04  18   point.
09:58:04  19           The second point, your Honor, is that the
09:58:07  20   allegations or the description in the argument of the
09:58:10  21   notice as to the first of the patents, the 431 patent, is
09:58:13  22   very different than what is in the complaint.  In the
09:58:17  23   first amended complaint against Google, there are two
09:58:19  24   paragraphs that talk about this presentation, paragraph 20
09:58:22  25   and paragraph 21.  There is no allegation in either of
```

those paragraphs that Google was accused at that time of infringing any of the patents. It was justified provided with some notice. That is not enough.

If discovery later indicates that somehow, Google understood that it was infringing, or that there was a high likelihood that it was infringing one of these patents, that would be a different issue. But that does not exist yet.

And they couldn't logically have alleged that the instrumentalities at issue in this case infringe because they didn't exist for nearly a decade, until a decade later. That is the 431 patent.

Last, your Honor, I want to make a point as it relates to the second patent in this case, the 084 patent. Plaintiff's counsel described that as the child of the 431 patent. I think that stretches the truth a little bit. I think if you follow the generations, it might be the great-great grandchild. It's five generations removed. The application wasn't even filed until five years after this meeting in '07.

And it really does strain credulity to say that Google would be on notice of an application that didn't exist for five years and a patent that wasn't issued for almost nine years. In all of the -- in the context of both of these patents, your Honor, the approach that the

Court described at the outset of the hearing would be acceptable to Google and, we would think, would be the proper way to deal with a situation in which the allegations of even notice of the patent are so scant but, most importantly, notice of any knowledge, or of infringement, or high probability of infringement is completely lacking.

THE COURT: Anything else?

MR. DEVOOGD: Just one final comment, your Honor. I won't belabor the ground that I've already covered.

Under clear Fifth Circuit law, especially where the relevant information is beyond the access of the plaintiff, courts should generally permit discovery to proceed unless the complaint recites no more than sheer speculation. All right. Absent that, the claims should stay in the pleading as it exists.

And I would cite for that proposition, the Wooten vs. McDonald case that's in our in briefs.

THE COURT: Well, I'll tell you all, I'm very torn. But here's what I'm going to do and you all are just going to be the -- have to be the guinea pigs because I have to do something. And by you all, I mean collectively guinea pigs.

I've thought pretty hard about what I'm going to try in this case. That doesn't mean that it will turn out

to be right, but I am going to dismiss your claims without prejudice, the plaintiff's claims. I've heard exactly what you've articulated. You will be -- if at the end of the three-month period after discovery, you want to reassert those claims, you'll have leave to do so; and at that point, if the arguments are still where they're at today, then the defendants can take it up on a motion for summary judgment. And that way, we can -- I can actually rule on it as a matter of law, as opposed to -- I don't see a great deal of difference, frankly, between saying I'm allowing it in and having motion for summary judgment as I am saying I'm dismissing without prejudice, letting you know it will be allowed back in if you choose to assert it again at the end of three months, after discovery.

I don't see that as being really much different. Either way, if it's in the case -- even if I were to leave it in the case right now, I assume I would be getting a motion for summary judgment, at some appoint, and have to deal with this. So that's -- just to be consistent, that's the way I'm going to do.

But I will tell you, I'm certainly -- I certainly understand all the arguments that you've made, and I'm going to have to wrestle with those arguments. And we may even set it for summary judgment hearing if you do

reassert it, and we'll take it up. I'll be better prepared to argue it from that perspective, rather than a perspective of just a motion to dismiss.

But I understand -- and I think we need to have a ruling -- it's one way or the other. I mean, I'm not -- I only get to make that decision temporarily until someone tells me. But, you know, I'd certainly hope maybe this will be the kind of case where we would get some guidance afterwards if the case gets far enough along.

But I want to make clear, I am dismissing it without preventing you from being able to assert it in the future if you choose to do that, and then, we'll take it up in a different setting.

MR. DEVOOGD: May I ask a question, your Honor?

THE COURT: Sure.

MR. DEVOOGD: That applies to the 431 patent allegation against with Google, as well?

THE COURT: Yes.

MR. DEVOOGD: Thank you, your Honor.

THE COURT: I understand all those arguments. And, like I said, I think I could just as easily say, as asserted, I'm going to defer fact that it was asserted and I should to the defer to the fact that on motion to dismiss, that's the way to do it. And I just -- I don't see it being all that different than doing it the

```
10:04:02   1   way I'm doing it.  I don't see any prejudice to the
10:04:04   2   plaintiff by doing it that way, and I think it lessens any
10:04:10   3   prejudice that's unnecessary to Google by maintaining it
10:04:13   4   in a case until you assert it, having had the opportunity.
10:04:16   5              I'm kind of with Mr. Snyder.  I don't know that
10:04:19   6   you will be able to find any -- and I'm not saying on this
10:04:25   7   particular one, on the quantum after they have actual
10:04:30   8   notice, not that there's proof that they did all the
10:04:33   9   pirate things but --
10:04:35  10              MR. DEVOOGD:  Right.
10:04:35  11              THE COURT:  But that's something that may or may
10:04:38  12   not get any further after discovery.  You will still be
10:04:41  13   allowed to re-file that claim, regardless of the
10:04:46  14   discovery.  And then, Google, and if they want, can file a
10:04:49  15   motion for summary judgment and we'll square up, and I'll
10:04:52  16   make an actual ruling on it, and I'll decide whether or
10:04:57  17   not to go with the Eastern District in Delaware or the
10:04:59  18   others.  Because they both have compelling reasons why I
10:05:02  19   think they're right.
10:05:04  20              MR. DEVOOGD:  Understood, your Honor.  And I
10:05:05  21   appreciate that from the pragmatic perspective.  The
10:05:10  22   solution may be elegant from your perspective.
10:05:13  23              I just want to note, for the record, that I do
10:05:16  24   share the concerns that Mr. Gilman and, I believe, Morgan
10:05:22  25   Chu articulated in the VLSI argument, back in August, as
```

```
10:05:27   1   to -- you know, I do not want to be frustrated in
10:05:30   2   discovery when I'm trying to get information to.
10:05:33   3              THE COURT:  You will not be frustrated in
10:05:34   4   discovery.
10:05:35   5              MR. DEVOOGD:  Substantiate these allegations.
10:05:36   6              THE COURT:  Okay.
10:05:37   7              MR. DEVOOGD:  Thank you.
10:05:38   8              THE COURT:  You've got my favorite law clerk that
10:05:40   9   you'll be dealing with in discovery.  I have no doubt you
10:05:43  10   will have no problems in discovery.
10:05:45  11              MR. DEVOOGD:  Thank you very much.
10:05:47  12              THE COURT:  He'll give Google great advice and
10:05:50  13   counsel on what they should do.
10:05:52  14              MR. DEVOOGD:  I have no doubt.  Thank you, your
10:05:53  15   Honor.
10:05:56  16              THE COURT:  We are going to take just a -- the
10:06:03  17   next case is slightly different than the facts in this
10:06:06  18   case.  We're going to take just a five-minute break and
10:06:08  19   then, come back out and resume with the case.
10:06:10  20              Was that everything with regard to Parus Holdings
10:06:13  21   against anybody that I needed to take up?
10:06:16  22              Yes, ma'am.
10:06:18  23              MS. VIDAL:  Your Honor, in view of your recent
10:06:21  24   rulings in our case, we had only moved to dismiss indirect
10:06:25  25   infringement based on the pre-suit allegations.
```

```
10:06:29   1              Will your Honor entertain dismissing it in its
10:06:32   2   entirety?
10:06:33   3              THE COURT:  We would in the same -- under the
10:06:35   4   same guidelines that I've set here.
10:06:38   5              MS. VIDAL:  Thank you, your Honor.
10:06:39   6              MR. GILMAN:  Can I get some clarification on
10:06:41   7   that, your Honor?
10:06:41   8              THE COURT:  Sure.
10:06:42   9              MR. GILMAN:  Everything in front of you on the
10:06:44  10   motion that VMware filed was simply for pre-suit damages.
10:06:48  11              Are you now saying you're going to dismiss our
10:06:51  12   indirect infringement claims?  Because I think that's in a
10:06:55  13   wholly different context than what's been argued on
10:06:56  14   willfulness.
10:06:56  15              THE COURT:  No.  I thought we were -- I meant
10:06:58  16   willfulness.
10:06:59  17              MR. GILMAN:  We don't have a willfulness claim.
10:07:01  18   So our case is much more narrow --
10:07:02  19              THE COURT:  Let me hear from Ms. Vidal again.  I
10:07:05  20   may have misunderstood.
10:07:06  21              MS. VIDAL:  My understanding -- and maybe I'm not
10:07:08  22   aware of all the issues that are pending in the other
10:07:10  23   cases is that your Honor was dismissing indirect
10:07:12  24   infringement and willfulness in the other cases, based on
10:07:15  25   the knowledge not being -- the complaint not being
```

```
10:07:18   1   sufficient for knowledge.
10:07:19   2              Is that?
10:07:21   3              THE COURT:  I am doing that in the other cases
10:07:23   4   but I don't think -- but Intellectual Ventures hadn't had
10:07:27   5   a chance to brief on those issues.  With regard to
10:07:30   6   willfulness and post filing the complaint, it probably
10:07:38   7   would be the same.
10:07:40   8              MS. VIDAL:  Right.  And willfulness is not in our
10:07:42   9   case.  It's only indirect infringement.
10:07:47  10              THE COURT:  There's no allegation of willfulness?
10:07:47  11              MS. VIDAL:  There's not.  It's only indirect
10:07:47  12   infringement.
10:07:47  13              THE COURT:  Okay.  So I would need to take that
10:07:50  14   up and give -- I would need to let Intellectual Ventures
10:07:53  15   --- if you want to move to have those dismissed to file a
10:07:56  16   motion, I'll hear from Intellectual Ventures.  I don't
10:08:00  17   think we'll need to have another hearing on that.  We'll
10:08:03  18   be able to take that up on the papers.  When you said, can
10:08:05  19   we have the same ruling, I just lost track that there was
10:08:08  20   no willfulness claim.  And so, what I was dealing with
10:08:11  21   was, I think we can deal with the willfulness in the same
10:08:16  22   manner as I am in the Parus Holdings cases, but I'm not
10:08:20  23   prepared until they have a chance to argue the other ones
10:08:23  24   to rule on that.
10:08:24  25              MS. VIDAL:  Thank you, your Honor.
```

Case 6:20-cv-00725-ADA   Document 33-3   Filed 12/11/20   Page 15 of 15
Case 6:19-cv-00432-ADA Document 107 Filed 02/19/20 Page 53 of 54

53

```
10:08:25   1              THE COURT:  Okay.  Anything else from anyone
10:08:30   2   until -- I'm going to go to the back.  I have to do one
10:08:35   3   thing, and then, we'll come back and we'll take up De La
10:08:39   4   Vega vs. Microsoft and Google.
10:14:17   5              (Recess.)
10:14:19   6              THE COURT:  The next case I have in front of me
10:14:23   7   is De La Vega vs. Microsoft and vs. Google.  And -- yes,
10:14:23   8   sir.
10:14:27   9              MR. DEVOOGD:  Andrew Devoogd, your Honor.  I
10:14:29  10   apologize for interrupting.
10:14:30  11              THE COURT:  No.
10:14:31  12              MR. DEVOOGD:  Counsel for defendants in the Parus
10:14:33  13   matters reminded me that I neglected to tell you that we
10:14:37  14   are no longer proceeding with our injunctive relief
10:14:39  15   claims.  That was also the subject of some of the
10:14:42  16   briefing.  So we will be withdrawing those allegations.
10:14:45  17              THE COURT:  Okay.  Very good.
10:14:47  18              MR. DEVOOGD:  Thank you, your Honor.
10:14:48  19              THE COURT:  You're doing that voluntarily.  I'm
10:14:50  20   not.
10:14:51  21              MR. DEVOOGD:  That is correct.  Streamlining the
10:14:54  22   case.
10:14:54  23              THE COURT:  Very good.
10:14:55  24              MR. DEVOOGD:  Thank you.
          25              (End of proceedings.)
```

*LILY I. REZNIK, OFFICIAL COURT REPORTER*
*U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)*

```
 1                          * * * * * *
 2
 3
 4   UNITED STATES DISTRICT COURT  )
 5   WESTERN DISTRICT OF TEXAS)
 6
 7      I, LILY I. REZNIK, Certified Realtime Reporter,
 8   Registered Merit Reporter, in my capacity as Official
 9   Court Reporter of the United States District Court,
10   Western District of Texas, do certify that the foregoing
11   is a correct transcript from the record of proceedings in
12   the above-entitled matter.
13      I certify that the transcript fees and format comply
14   with those prescribed by the Court and Judicial Conference
15   of the United States.
16      WITNESS MY OFFICIAL HAND this the 7th day of February,
17   2020.
18
19
20                         /s/Lily I. Reznik
                          LILY I. REZNIK, CRR, RMR
21                         Official Court Reporter
                          United States District Court
22                         Austin Division
                          501 W. 5th Street,
23                         Suite 4153
                          Austin, Texas 78701
24                         (512)391-8792
                          Certification No. 4481
25                         Expires:  1-31-21
```

*LILY I. REZNIK, OFFICIAL COURT REPORTER*
*U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)*