# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| CASTLEMORTON WIRELESS, LLC, | Civil Action No. 6:20-cv-00029-ADA |
| *Plaintiff,* | |
| v. | JURY TRIAL DEMANDED |
| BOSE CORPORATION, | |
| *Defendant.* | |

## PLAINTIFF CASTLEMORTON WIRELESS, LLC'S OPPOSITION TO BOSE CORPORATION'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    STATEMENT OF FACTS ............................................................................... 1

       A.   Background Of The Invention ........................................................ 2

       B.   Bose Products Identify A Suppressed Carrier Frequency............... 2

       C.   Security Orders Delay Publication Of The '421 Patent For Twenty Years................. 3

III.   LEGAL STANDARD ..................................................................................... 6

IV.    BOSE'S INDEFINITENESS ARGUMENT IS PREMATURE .......................... 6

       A.   Indefiniteness Is Inextricably Linked To Claim Construction, Making
            Resolution Prior To Claim Construction Improper. ....................... 7

       B.   Indefiniteness Determinations Prior To Claim Construction Are Disfavored. ............. 8

V.     THE '421 PATENT IS DEFINITE ................................................................. 9

       A.   The Correction Addresses An Obvious Typographical Error Not Subject To
            Reasonable Debate. ...................................................................... 10

            1)   The Correction "Any Frequency" Is Not Subject To Reasonable Debate
                 Based On The Claim Language And Specification............................ 10

            2)   The Prosecution History Establishes That Substituting "Any Frequency"
                 Is the Proper Correction. ........................................................... 11

       B.   Even Assuming "An Frequency" Is Subject To Several Different Corrections,
            Any Reasonable Corrections Would Have The Same Scope. .......... 12

            1)   The Terms "A Frequency" And "Any Frequency" Have The Same Scope........ 14

            2)   Court Decisions Confirm, "A" And "Any" Have The Same Meaning
                 When Followed By A Restrictive Modifier. ....................................... 14

VI.    CASTLEMORTON'S ALLEGATIONS ESTABLISH DIRECT INFRINGEMENT ............................. 15

VII.   CASTLEMORTON'S INDUCED INFRINGEMENT ALLEGATIONS ARE SUFFICIENT. ................... 17

VIII.  CONCLUSION ........................................................................................... 20

## TABLE OF AUTHORITIES

### Cases

*01 Communique Lab., Inc. v. LogMeIn, Inc.*,
    687 F.3d 1292 (Fed. Cir. 2012)......................................................... 14

*Adaptix, Inc. v. Apple, Inc.*,
    2014 U.S. Dist. LEXIS 152797 (N.D. Cal. Oct. 27, 2014)............... 14

*Advanced Tech. Incubator, Inc. v. Sharp Corp.*,
    2009 U.S. Dist. LEXIS 109173 (E.D. Tex. June 26, 2009)............... 8

*Affinity Labs of Tex., LLC v. Toyota Motor N. Am., Inc.*,
    2014 U.S. Dist. LEXIS 90379 (W.D. Tex. May 12, 2014)................ 20

*Aguirre v. Powerchute Sports, LLC*,
    2011 U.S. Dist. LEXIS 65003 (W.D. Tex. June 17, 2011)............... 19

*Apeldyn Corp. v. Sony Corp.*,
    852 F. Supp. 2d 568 (D. Del. 2012)................................................... 19

*California Inst. of Tech. v. Hughes Commc'ns Inc.*,
    35 F. Supp. 3d 1176 (C.D. Cal. 2014) ............................................... 7

*CBT Flint Partners, LLC v. Return Path, Inc.*,
    654 F.3d 1353 (Fed. Cir. 2011)................................................. *passim*

*Chapterhouse, LLC v. Shopify, Inc.*,
    2018 U.S. Dist. LEXIS 219072 (E.D. Tex. Dec. 10, 2018)............. 17

*CLM Analogs, LLC v. James R. Glidewell Dental Ceramics, Inc.*,
    2018 U.S. Dist. LEXIS 225319 (C.D. Cal. June 19, 2018) .............. 7

*Comm'r of Internal Revenue v. Kelley*,
    293 F.2d 904 (5th Cir. 1961) ............................................................ 15

*ContentGuard Holdings, Inc. v. Amazon.com, Inc.*,
    2015 U.S. Dist. LEXIS 34667 (E.D. Tex. Mar. 20, 2015)................ 8

*CXT Sys. v. Acad., Ltd.*,
    2019 U.S. Dist. LEXIS 151714 (E.D. Tex. Sep. 5, 2019) ............... 11

*Datascape, Inc. v. Sprint Spectrum, Ltd. P'ship*,
    2011 U.S. Dist. LEXIS 159326 (N.D. Ga. Nov. 30, 2011) ............. 13

*Eon Corp. IP Holdings, LLC v. Sensus USA, Inc.*,
    2012 U.S. Dist. LEXIS 141965 (N.D. Cal. Oct. 1, 2012)................. 18

*Fairfield Indus. v. Wireless Seismic, Inc.*,
    2015 U.S. Dist. LEXIS 28870 (S.D. Tex. Mar. 10, 2015)................ 13

*Frac Shack Inc., v. AFD Petroleum (Texas) Inc.*,
    No. 7:19-cv-00026-DC, Dkt. No. 57 (W.D. Tex. June 13, 2019) ..... 18

*Gebo Cermex USA, Inc. v. All. Indus. Corp.*,
    2019 U.S. Dist. LEXIS 91780 (W.D. Va. May 31, 2019) ................ 8

*Harrington v. State Farm Fire & Cas. Co.*,
  563 F.3d 141 (5th Cir. 2009) ....................................................... 16

*Hoffer v. Microsoft Corp.*,
  405 F.3d 1326 (Fed. Cir. 2005)...................................................... 6

*Imperium (IP) Holdings v. Apple Inc.*,
  920 F. Supp. 2d 747 (E.D. Tex. 2012).......................................... 8

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012)........................................... 17, 18, 19

*Labyrinth Optical Techs., LLC v. Fujitsu Am., Inc.*,
  2013 U.S. Dist. LEXIS 188873 (C.D. Cal. Aug. 21, 2013).......................... 17, 18

*Lamoureux v. AnazaoHealth Corp.*,
  669 F. Supp. 2d 227 (D. Conn. 2009).......................................... 15

*Lecat's Ventriloscope v. MT Tool & Mfg.*,
  2017 U.S. Dist. LEXIS 2631 (N.D. Ill. Jan. 6, 2017) ......................... 8

*Lee v. Weisman*,
  505 U.S. 577 (1992).......................................................... 15

*Lemelson v. Gen. Mills, Inc.*,
  968 F.2d 1202 (Fed. Cir. 1992)............................................... 11

*Meetrix IP, LLC v. Cisco Sys., Inc.*,
  2018 U.S. Dist. LEXIS 225719 (W.D. Tex. Nov. 30, 2018).......................... 18

*Metso Minerals Indus., Inc. v. Johnson Crushers Int'l, Inc.*,
  866 F. Supp. 2d 1024 (E.D. Wis. 2011).......................................... 11

*Motiva Patents, LLC v. Sony Corp.*,
  408 F. Supp. 3d 819 (E.D. Tex. 2019).......................................... 20

*N. Am. Vaccine, Inc. v. Am. Cyanamid Co.*,
  7 F.3d 1571 (Fed. Cir. 1993).................................................. 14

*Nalco Co. v. Chem-Mod, LLC*,
  883 F.3d 1337 (Fed. Cir. 2018)................................................ 7

*Nautilus, Inc. v. Biosig Instruments*,
  572 U.S. 898 (2014)........................................................... 7

*Nokia Sols. & Network US LLC v. Huawei Techs. Co. Ltd.*,
  2017 U.S. Dist. LEXIS 79837 (E.D. Tex. May 24, 2017)............................ 13

*Novo Indus., L.P., v. Micro Molds Corp.*,
  350 F.3d 1348 (Fed. Cir. 2003)................................................ 6

*Parity Networks, LLC v. Cisco Sys., Inc.*,
  No. 6:19-cv-00209, Dkt. 21 (W.D. Tex. July 26, 2019).......................... 16, 18

*Patent Harbor, LLC v. Dream Works Animation SKG, Inc.*,
  2012 U.S. Dist. LEXIS 114199 (E.D. Tex. Jul. 27, 2012)......................... 19

*Pavo Sols., LLC v. Kingston Tech. Co.*,
2018 U.S. Dist. LEXIS 154880 (C.D. Cal. Sep. 10, 2018) ............................................... 13

*Pulse Eng'g, Inc. v. Mascon, Inc.*,
2009 U.S. Dist. LEXIS 26885 (S.D. Cal. Mar. 9, 2009) .................................................. 11

*Smart Wearable Technologies v. Microsoft Corporation*,
Case No. 16-cv-0047, Dkt. 36 (W.D. Va. January 31, 2017) ........................................... 9

*Solutions L.L.C. v. Amazon.com, Inc.*,
170 F. Supp. 3d 928 (E.D. Tex. Mar. 16, 2016) ............................................................ 20

*TexasLDPC Inc. v. Broadcom Inc.*,
2020 U.S. Dist. LEXIS 46773 (D. Del. Mar. 18, 2020). ................................................. 16

*Titanide Ventures, LLC v. IBM Corp.*,
2012 U.S. Dist. LEXIS 163430 (E.D. Tex. Oct. 18, 2012) ............................................... 8

*Titanide Ventures, LLC v. IBM*,
2012 U.S. Dist. LEXIS 162465 (E.D. Tex. Nov. 14, 2012) ............................................... 8

*TiVo, Inc. v. EchoStar Commc'ns Corp.*,
516 F.3d 1290 (Fed. Cir. 2008) .................................................................................... 14

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,
587 F.3d 1339 (Fed. Cir. 2009) ................................................................................... 6, 9

*United States v. Alabama*,
778 F.3d 926 (11th Cir. 2015) ..................................................................................... 15

*UUSI, LLC v. United States*,
131 Fed. Cl. 244 (2017) .............................................................................................. 11

*Xpoint Techs., Inc. v. Microsoft Corp.*,
730 F. Supp. 2d 349 (D. Del. 2010) .............................................................................. 19

*Yeti Coolers, LLC v. RTIC Coolers, LLC*,
2016 U.S. Dist. LEXIS 94452 (W.D. Tex. July 19, 2016) ............................................... 20

## Other Authorities

Bryan Garner, *Garner's Dictionary of Legal Usage* (3rd Ed. 2011) ............................................ 14

MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY ELEVENTH EDITION (2003) ............................ 14

Robert C. Faber, *Landis on Mechanics of Patent Claim Drafting* (3rd Ed. 1990) ...................... 14

## Rules

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 1, 8, 9, 16

Fed. R. Civ. P. 8(a) ......................................................................................................... 16

## I.     INTRODUCTION

Defendant Bose Corporation's ("Bose") Motion to Dismiss (Dkt. No. 17, hereinafter, "Motion") should be denied.  Bose's Motion is premised on the incorrect assertion that the asserted patent is indefinite.  But courts widely recognize that indefiniteness should not be decided at the pleadings stage as it is a factual issue inherently tied to claim construction.  Here, the Court would have to construe the meaning of "an frequency," and it would have to do so without the benefit of claim construction briefing, a Markman hearing, or expert testimony.  Asking the Court to engage in such claim construction is premature at this stage, and the Court should join the vast majority of district courts that reject Rule 12(b)(6) motions to dismiss based on indefiniteness.  Further, even if the Court did engage in an indefiniteness analysis at this stage, Bose has failed to establish by clear and convincing evidence that the asserted claims are indefinite.

Bose next argues that Castlemorton Wireless, LLC ("Castlemorton") has alleged facts insufficient to plead direct infringement.  Bose's argument is entirely premised on this Court finding the patent indefinite.  Should the court find the patent definite, Castlemorton's pleading is more than sufficient.

Finally, Bose argues that Castlemorton's induced infringement claims fail to show Bose's specific intent to induce infringement and that, as a matter of law, induced infringement claims cannot be based on post-complaint knowledge.  Bose misstates the law.  Castlemorton alleges induced infringement based on knowledge from the filing of its Complaint.  That is sufficient.  Further, Castlemorton identifies Bose's manuals, product support material, and websites which all establish specific intent to infringe the patents.  Castlemorton respectfully asks that the Court deny Bose's motion.

## II.    STATEMENT OF FACTS

This case arises from Bose's infringement of U.S. Patent No. 7,835,421 (the, "'421

patent").  The inventions disclosed in the '421 patent were developed in the early 1980s by Geoffrey Bagley, a researcher at the Royal Signals and Radar Establishment, a scientific research organization within the Ministry of Defence of the United Kingdom.  Dkt. No. 1 ("Compl."), ¶ 4.

### A.  Background Of The Invention

The '421 Patent describes a method and apparatus for identifying a "carrier frequency" for use in wireless communication.  Compl., ¶ 38.  A carrier frequency is a specific frequency over which wireless devices transmit data, as, for example, between a smartphone handset and a Wi-Fi router.  *Id*., ¶ 39.  Many wireless devices that transmit data attempt to spread out the frequency used to transmit the data using direct sequence spread spectrum ("DSSS") modulation.  *Id*., ¶ 56. Prior art to the '421 patent had identified that spreading a signal over a broader frequency had the effect of suppressing the carrier frequency, making it difficult to decode a DSSS modulated signal. *Id*., ¶ 42. The '421 patent teaches receiving a DSSS modulated signal (a signal spread over a frequency band) then subtracting the DSSS signal from a signal with a higher frequency than the DSSS signal.  *Id*., ¶ 81.  This process generates a frequency inverted signal that is used to identify the carrier frequency and thus decode the signal.  *Id*., ¶ 82.  This process is incorporated today in Wi-Fi devices that comply with the IEEE 802.11b and 802.11g standards.

### B.  Bose Products Identify A Suppressed Carrier Frequency.

The '421 patent and the accused Bose products identify a carrier frequency by receiving a DSSS modulated signal where the carrier frequency is unknown but is within a specific band of frequencies.  The '421 patent offers an illustrative embodiment wherein "An antenna 20 is arranged to receive signals in the $4.0\pm0.02$ GHz band, and to supply the signals to a mixer."  '421 patent, col. 3:13-15.  Similarly, the Bose products receive DSSS signals in the 2.4 GHz band. Specifically, the Bose products receive DSSS signals in the $2.44175\pm.04175$ GHz band.  The Complaint identifies this band as the "spectral range between 2.400-2.4835 GHz."  Compl., ¶ 72.

The '421 patent teaches subtracting the received DSSS signal from a signal having a higher frequency than the DSSS signal spectrum. '421 patent, col. 4:36-39. Because DSSS signals are spread across a fixed range of frequency, one can subtract the DSSS signal from a higher frequency than the highest frequency in the DSSS signal's band. The '421 patent offers an exemplar embodiment that illustrates the process - the received DSSS signal is spread across a range from 3.98GHz to 4.02GHz and subtracted from a higher frequency (4.07GHz). *Id.* at 3:11-15. The Bose products in compliance with IEEE 802.11b take a received DSSS signal (with a frequency band of "2.400-2.4835 GHz.") and subtract it from a frequency above 2.4835 GHz. Compl., ¶ 76.

### C. Security Orders Delay Publication Of The '421 Patent For Twenty Years.

Geoffrey Bagley filed the application that led to the '421 patent with the United Kingdom's patent office on January 4, 1983, and with the United States Patent and Trademark Office ("PTO") later that same year. Compl., ¶ 37. Shortly thereafter, the British and United States governments found that disclosure of the patent applications would be "detrimental to national security." *Id.*, ¶ 16. This ruling rendered the patent application for the '421 patent classified and made any publication of it a criminal act. However, although a patent application is subject to a secrecy order, the patent application is still prosecuted by the patent office albeit with strict protections to prevent disclosure. Over the following years, Mr. Bagley and the UK Defence Ministry diligently moved his patent application forward, despite not knowing when his patent would issue.

On January 18, 1990, Mr. Bagley and the UK Defence Minsitistry, through their patent attorney, submitted a set of amended claims to the patent office. *See January 18, 1990 Preliminary Amendment* (Declaration of Dorian S. Berger ("Berger Decl."), Ex. 1). The file history of the '421 patent contains a copy of the January 18, 1990, amended claim language. Claim 12, which would later issue as claim 6 reads:



*January 18, 1990 Preliminary Amendment*, '421 PATENT FILE HISTORY (Berger Decl. Ex. 1 at 2) (dated January 18, 1990 and marked received by the PTO on January 22, 1990).

Accompanying the January 18, 1990, amendment of claims are remarks explaining that claims 7 through 12 (which would issue as claims 1-6) had been amended with the same language:

> Claims 7-12 have now been amended to clearly recite that the DSSS signal spectrum has a plurality of frequencies contained therein, although it is a single signal. However, the means for subtracting subtracts each of the frequencies in the DSSS signal from a single "signal" having a frequency higher than any frequency in the DSSS signal. Accordingly, the resultant signal is an inversion of the DSSS signal spectrum. The amended language of claims 7 and 12 is believed to obviate any further I rejection of these claims under the provisions of 35 USC 112.

*January 18, 1990 Preliminary Amendment,* '421 PATENT FILE HISTORY (Berger Decl. Ex. 1 at 3) (emphasis added).

The file history of the '421 patent makes clear that the language of the amended claim that would issue as Claim 6 should read "having a frequency higher than any frequency in the DSSS signal."

On May 21, 1990, in response to the January 18, 1990, Preliminary Amendment of claims, the PTO issued a "Notice of Allowability" and allowed the previously submitted claims 7-12. *Notice of Allowability*, '421 PATENT FILE HISTORY (Berger Decl. Ex. 2 at 1) ("This application is now in condition for allowance, and the prosecution is closed . . . The allowable claims are: 7-

12."). However, the Notice of Allowability was subject to an ongoing secrecy and "under 35 U.S.C. (1952) 181, this application will be withheld from issue during such period as the national interest requires." *Id*. During the following twenty years, the United States government issued five further secrecy orders which prevented the issuance of the '421 patent. Compl., ¶ 26.

On April 12, 2010, the PTO lifted the secrecy order. Berger Decl. Ex. 3 at 2. The patent office then appears to have used a photocopied page from the then two-decade old file history to print the claims in the '421 patent grant. It appears that the photocopied page used by the PTO to print these claims was cutoff on the righthand side. Berger Decl. Ex. 4 at 3 (the photocopied page in the file history is marked as created by the U.S. PTO on February 22, 1990). As can be seen in the below image from the '421 patent file history, the terms "any" and "signal" (in the fourth and fifth lines) are both cutoff on the righthand side.



*February 22, 1990 Marked Up Copy of Claims Prepared By The U.S. Patent Office*, '421 PATENT FILE HISTORY (Berger Decl. Ex. 4 at 3).

On July 2, 2010, the PTO issued a further "Notice of Allowability" confirming claims 7-12 were allowed. Berger Decl. Ex. 5 at 4 ("The allowed claim(s) is/are 7-12"). On November 16, 2010, the PTO published the '421 patent. Claim 6 was published containing language containing

the text from the "cutoff page" of claims that is dated February 22, 1990 instead of the claim language that was submitted to and approved by the PTO. As printed in the issued patent, the first element of claim 6 reads: "subtracting the DSSS signal from a signal having a higher frequency than an frequency in the DSSS signal spectrum to produce DSSS signal frequency spectrum inversion[]." '421 patent, 4:36-39 (emphasis added).

## III.  LEGAL STANDARD

In a patent infringement suit, a district court may correct an obvious error in a patent claim. *CBT Flint Partners, LLC v. Return Path, Inc.*, 654 F.3d 1353, 1358 (Fed. Cir. 2011) (citation omitted). A district court has authority to correct a patent if: "(1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." *Novo Indus., L.P., v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003).

The court must make the determination of the presence of an error – and any correction – from the point of view of one skilled in the art. *CBT Flint Partners,* 654 F.3d at 1358-59; *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1353 (Fed. Cir. 2009); *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1331 (Fed. Cir. 2005) ("A patent should not be invalidated based on an obvious administrative error....When a harmless error in a patent is not subject to reasonable debate, it can be corrected by the court."). If there are several possible alternative corrections, a correction should be made if all the possible corrections have the same claim scope. The Federal Circuit, in reversing a district court's finding of indefiniteness, held "the district court failed to recognize that the claim contained an obvious error, which is confirmed by the fact that a person of skill in the art would find the claim to have the same scope and meaning under each of the three possible meanings that the court found reasonable." *CBT Flint Partners,* 654 F.3d at 1358-59.

## IV.  BOSE'S INDEFINITENESS ARGUMENT IS PREMATURE

Granting Bose's motion would require the Court to construe a claim term without the benefit of claim construction briefing or a *Markman* hearing, let alone any expert testimony or other evidence useful to a claim construction dispute. In determining whether to correct an error, a Court must take into account the prosecution history. In *Nautilus, Inc. v. Biosig Instruments, Inc.*, the Supreme Court held that, in evaluating indefiniteness, claims should be "read in light of the specification delineating the patent, and the prosecution history," from the perspective of one skilled in the art. 572 U.S. 898, 898-899 (2014). A person of ordinary skill would thus look to the same prosecution history materials Castlemorton uses to support its proposed correction, which show that the limitation should read "<u>any</u> frequency." Even if the Court declines to correct the typographical error in claim 6 (i.e., inserting the letter "y" after "an"), the Court would be required to inquire whether Bose's alternative construction, "<u>a</u> frequency," would change the scope of the patent. Yet, Bose seeks to have this Court make both inquiries without a full factual record.

### A. Indefiniteness Is Inextricably Linked To Claim Construction, Making Resolution Prior To Claim Construction Improper.

An indefiniteness analysis is inextricably linked to claim construction because the first step of the analysis requires the court to "attempt to construe" the allegedly indefinite claim. *California Inst. of Tech. v. Hughes Commc'ns Inc.*, 35 F. Supp. 3d 1176, 1181 (C.D. Cal. 2014) ("First, the court should attempt to construe a claim. If the claim is not amenable to construction, then the claim is indefinite.") (citing *Nautilus, Inc.,* 572 U.S. at 911).

The Federal Circuit holds claim construction disputes are "not suitable for resolution on a motion to dismiss." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349 (Fed. Cir. 2018). In the "great majority" of cases, and in keeping with *Nalco*, district courts decline to resolve at the pleading stage arguments that require determination of the proper interpretation of a claim term. *CLM Analogs, LLC v. James R. Glidewell Dental Ceramics, Inc.*, 2018 U.S. Dist. LEXIS 225319, at *9 (C.D. Cal. June 19, 2018). This is particularly true in cases where defendants move to dismiss

on grounds of indefiniteness.  *See, e.g.*, *Gebo Cermex USA, Inc. v. All. Indus. Corp.*, 2019 U.S.

Dist. LEXIS 91780, at *10 (W.D. Va. May 31, 2019) ("Given the settled practice among district

courts of awaiting determination of indefiniteness arguments until after a Markman hearing and

claim construction, the Court will deny [Defendant]'s motion to dismiss as premature at the Rule

12(b)(6) stage.").[1]

### B.  Indefiniteness Determinations Prior To Claim Construction Are Disfavored.

A clear majority of courts decline to analyze claims for indefiniteness at the pleadings

stage.  Notably, Bose fails to cite a single case in which a court granted a Rule 12(b)(6) motion to

dismiss for indefiniteness. The opinions Bose does cite were based on a full factual record

following claim construction.  *See Imperium (IP) Holdings v. Apple Inc.*, 920 F. Supp. 2d 747, 757

(E.D. Tex. 2012) ("[T]he standard [for finding indefiniteness] is met where an accused infringer

shows by clear and convincing evidence that a skilled artisan could not discern the boundaries of

the claim based on the claim language, the specification, and the prosecution history.") (citation

omitted); *ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, 2015 U.S. Dist. LEXIS 34667, at *8

(E.D. Tex. Mar. 20, 2015) ("To ascertain the meaning of claims, courts look to three primary

sources: the claims, the specification, and the prosecution history."); *Advanced Tech. Incubator,*

*Inc. v. Sharp Corp.,* U.S. Dist. LEXIS 109173, at *55 (E.D. Tex. June 26, 2009) (cited by Bose

for the proposition that judicial correction is "nearly impossible" yet the opinion states, "Judicial

correction (and its retroactive effect) is not appropriate here.  Because the purported error is more

significant than a mere misspelling or ***missing letter***.") (emphasis added).

---

[1] *See also Lecat's Ventriloscope v. MT Tool & Mfg.*, 2017 U.S. Dist. LEXIS 2631, at *23 (N.D.
Ill. Jan. 6, 2017) ("Numerous district courts have declined to entertain indefiniteness arguments
at the pleading stage for precisely this reason."); *Titanide Ventures, LLC v. IBM Corp.*, 2012
U.S. Dist. LEXIS 163430, at *8 (E.D. Tex. Oct. 18, 2012) (denying motion to dismiss for
indefiniteness as premature before claim construction), *report and recommendation adopted*,
*Titanide Ventures, LLC v. IBM*, 2012 U.S. Dist. LEXIS 162465 (E.D. Tex. Nov. 14, 2012).

In contrast to the cases cited by Bose, Courts have found that correcting printing errors should not be undertaken on a Rule 12(b)(6) motion. "[A] Rule12(b)(6) motion is not the appropriate vehicle for the court to decide whether it has the authority to correct the printing error in Claim 8." *Smart Wearable Technologies v. Microsoft Corp.,* No. 16-cv-0047, Dkt. 36 (Berger Decl. Ex. 6) at 5 (W.D. Va. January 31, 2017).

## V.   THE '421 PATENT IS DEFINITE

Bose asks the Court to dismiss Castlemorton's complaint as claim 6 of the '421 patent is indefinite. Bose argues that the use of the term "an frequency" is an obvious error that is open to two possible interpretations: "a frequency" or "any frequency." Motion at 2. According to Bose's misreading of Federal Circuit law, the Court is precluded from looking to the prosecution history to determine a proper correction even if the error is a clear typographical error. *Id.,* at 3. Bose's argument is premised on two mistakes of law.

*First*, where an error is apparent from reading a claim, a court can correct an obvious typographical error "if the correction is not subject to reasonable debate to one of ordinary skill in the art, namely, through claim language and the specification, and the prosecution history does not suggest a different interpretation." *Ultimax Cement Mfg. Corp.*, 587 F.3d at 1353. Here, the phrase "a signal having a higher frequency than <u>an frequency</u> in the DSSS signal spectrum" would be understood by one skilled in the art to mean "any frequency." The '421 patent prosecution history does not suggest any other interpretation and instead shows that "an frequency" was a transcription error by the PTO when the allowed claim was printed and should have read "any claim."

*Second*, assuming, *arguendo*, that one skilled in the art would find multiple alternative corrections to the term "an frequency," if all reasonable corrections of the claim have the same claim scope as viewed by one skilled in the art, the patent is not indefinite. *CBT Flint Partners*, 654 F.3d at 1358 (Fed. Cir. 2011) ("[A] person of skill in the art would find the claim to have the

same scope and meaning under each of the three possible meanings that the court found reasonable."). Here, Bose's proposed corrections of (1) "a signal having a higher frequency than **a** frequency in the DSSS signal spectrum" and (2) "a signal having a higher frequency than **any** frequency in the DSSS signal spectrum" have the same scope, thus the term is definite.

## A. The Correction Addresses An Obvious Typographical Error Not Subject To Reasonable Debate.

Bose argues that the PTO's accidental omission of the letter "y" after the word "an" in claim 6 renders that claim invalid. Motion at 2. But this is an obvious typographical error that the Court has the power to correct. Even without correction, Bose has yet to establish that a person of ordinary skill in the art would be unable to ascertain the scope of the claim from the specification and contextualizing claim language.

### 1) The Correction "Any Frequency" Is Not Subject To Reasonable Debate Based On The Claim Language And Specification.

Bose concedes that the claim contains an error that is apparent from the face of the '421 patent. *See* Mot. at 1, 2, 8 ("This case cannot proceed with this error in the claim"); *id.*, at 1 ("incorrect indefinite article"). The only reasonable interpretation of the "an frequency" to one skilled in the art would be "any frequency." First, the patent specification teaches that the higher frequency used for frequency inversion must be higher than any frequency in the DSSS signal spectrum. The specification states, "The oscillator frequency is arranged to be higher than the largest frequency in the DSSS signal of interest." '421 patent, col. 2:36-38. Thus, it would be clear to one skilled in the art that the specification describes a "frequency" that is higher than any frequency in the DSSS signal spectrum.

Courts have routinely found typographical errors analogous to the one at issue in the '421 patent to be correctable. *See*, *e.g.*, *CBT*, 654 F.3d at 1356 (obvious error in phrase "detect analyze"

could be corrected by court by inserting "and" between "detect" and "analyze").[2]

### 2) The Prosecution History Establishes That Substituting "Any Frequency" Is the Proper Correction.

The prosecution history of the '421 Patent not only fails to suggest a different interpretation of claim 6 than that which Bose advances, but actually provides intrinsic evidence that "an frequency" should properly read "any frequency." The prosecution history of the '421 Patent establishes that the appropriate correction is not subject to reasonable debate. *See*, *e.g.*, *Howmedica Osteonics Corp.*, 2013 WL 3455727, at *28 (correcting error in claim phrase "inner surface" to mean "outer surface" where "the prosecution history supports [movant]'s position that the locking member was intended to be on the outer surface of the bearing.").

Three pieces of evidence support finding that the typographical error "an frequency" can only reasonable be construed as "any frequency." *First*, the claims that were submitted to the PTO on January 18, 1990, clearly stated that the claim should read "any frequency." Berger Decl. Ex. 1 at 2. These claims were allowed without modification on May 21, 1990 (Berger Decl. Ex. 2 at 1), and there is no evidence that the claims should be understood as containing any wording contrary to "any frequency." *Second*, the amended claim language that was submitted by the patentee was directly responsive to a request by the PTO to provide clarity as to the higher frequency signal used for signal inversion. In an accompanying remark submitted to the PTO, the

---

[2] *See also CXT Sys. v. Acad., Ltd.*, 2019 U.S. Dist. LEXIS 151714, at *80-83 (E.D. Tex. Sep. 5, 2019) (examining the file history in construing "a host servers" as "a host server" despite defendant's contention that the claim was indefinite); *UUSI, LLC v. United States*, 131 Fed. Cl. 244, 265 (2017) ("[T]he Court corrects this facially apparent grammatical error and construes "a voltage signal" to mean "voltage signals."); *Lemelson v. Gen. Mills, Inc.*, 968 F.2d 1202, 1203 n.3 (Fed. Cir. 1992) (permitting correction of patent by inserting "toy" in claim where patent on its face was clearly directed at a "toy trackway" rather than an actual "trackway"); *Metso Minerals Indus., Inc. v. Johnson Crushers Int'l, Inc.*, 866 F. Supp. 2d 1024, 1030-34 (E.D. Wis. 2011) (correcting typographical error for claim phrase "and thereby closer or farther away from said bowl" to read "from said *cone*"); *see also Pulse Eng'g, Inc. v. Mascon, Inc.*, 2009 U.S. Dist. LEXIS 26885, at *24 (S.D. Cal. Mar. 9, 2009) (correcting "output terminal" to "input terminal," in part because patentee made the same correction in a continuation-in-part of the asserted patent).

applicant stated that "claims 7 and 12 have now been amended to clearly recite that . . . subtracting subtracts each of the frequencies in the DSSS signal from a 'single' signal having a higher frequency than any frequency in the DSSS signal." Berger Decl. Ex. 1 at 3. It was on this basis that the claims were allowed and the interpretation of "an frequency" must be construed as "any frequency." *Third*, the file history clearly states that the proposed claim language for claims 7 and 12 (which issued as claims 1 and 6, respectively) were meant to contain identical language for the first element. As claims 7 and 12 are independent claims related, respectively, to a means-plus-function apparatus to carry out the functions of a method and that method. *See* Berger Decl. Ex. 1 at 3 ("The amended language of claims 7 and 12 is believed to obviate any further rejection.").

A plain reading of claim 6 reveals that "an frequency" should instead read "any frequency," this mistake is an "obvious error," "apparent from the face of the patent." *Novo*, 350 F.3d at 1355, 1357. The suggested error here is thus evident on the face of the '421 patent and the appropriate correction -- from "an frequency" to "any frequency" -- is not subject to reasonable debate.

### B. Even Assuming "An Frequency" Is Subject To Several Different Corrections, Any Reasonable Corrections Would Have The Same Scope.

The small typographical error in the claim can be easily corrected because the meaning of the term is easily ascertainable. The fact that it might be corrected in two ways, both of which achieve the same result, does not mean that the claim is indefinite. Bose suggests as an alternative to "any" the substitution of "a." As discussed above, however, the claim itself and the prosecution history establish that the substitution of "any" is the only proper correction.

Even if Bose is correct that the error can be corrected in two ways, the mere fact that multiple reasonable corrections exist does not prevent the Court from correcting the term. In *CBT Flint Partners, LLC v. Return Path, Inc*., the Federal Circuit noted that the district court rightly identified that there were three alternative but reasonable corrections to a claim term. 654 F.3d at

1358. Nevertheless, the Federal Circuit held that the district court erred in finding that it was unauthorized to correct the error. *Id.* at 1358-59. The Federal Circuit reiterated the district court's responsibility to consider the alternatives "from the viewpoint of one skilled in the art," *id*. at 1358, and found "[b]ecause each of the three proposed reasonable interpretations would result in the **same claim scope** . . . a person of skill in the art would readily know that the meaning of the claim" *Id*. at 1359 (emphasis added).

District courts that have encountered multiple reasonable interpretations of a claim term have found a patent definite where the various interpretations would have the same claim scope. *See Nokia Sols. & Network US LLC v. Huawei Techs. Co. Ltd.,* 2017 U.S. Dist. LEXIS 79837, at *89-90 (E.D. Tex. May 24, 2017) ("Though there may be different grammatical changes that could be made to the claim, in context of the surrounding claim language and the specification, the meaning of such changes remains the same. Thus, the claim provides reasonable certainty and is sufficiently definite."); *Fairfield Indus. v. Wireless Seismic, Inc.*, 2015 U.S. Dist. LEXIS 28870, at *53 (S.D. Tex. Mar. 10, 2015) ("Here too, either interpretation would have the same claim scope as understood by a person skilled in the art."); *Pavo Sols., LLC v. Kingston Tech. Co.,* 2018 U.S. Dist. LEXIS 154880, at *8 (C.D. Cal. Sep. 10, 2018) ("Plaintiff persuasively argues that these two interpretations would result in a claim of the same scope and meaning."); *Datascape, Inc. v. Sprint Spectrum, Ltd. P'ship*, 2011 U.S. Dist. LEXIS 159326, at *135 (N.D. Ga. Nov. 30, 2011) (reviewing *CBT Flint* and finding that "although there may be multiple alternatives for correcting a claim, a district court must view the alternatives from the point of view of one of ordinary skill in the art. If all alternatives result in the same claim scope, the district court has power to correct the claim."); *Adaptix, Inc. v. Apple, Inc.,* 2014 U.S. Dist. LEXIS 152797, at *27 (N.D. Cal. Oct. 27, 2014) ("Replacing the term "subscriber units" with "subcarriers" in Claim 18 does no more

than assure the patentees protection for the exact scope of the claim originally intended.").

1)  <u>The Terms "A Frequency" And "Any Frequency" Have The Same Scope.</u>

The terms "a frequency higher than <u>any frequency</u> in the DSSS signal spectrum" and "a frequency higher than <u>a frequency</u> in the DSSS signal spectrum" both have the same claim scope - requiring the high frequency be higher than the signal band used by the DSSS signal.  Correct grammatical interpretation dictates that where the indefinite article "a" is followed by a restrictive clause or modifier, the indefinite article is being used as a synonym for "any."  *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY ELEVENTH EDITION 1 (2003) (Berger Decl. Ex. 7 at 4) (explaining that the indefinite article "a" means "any" when used "before a singular noun followed by a restrictive modifier"); *see also* Bryan Garner, *Garner's Dictionary of Legal Usage* 66 (3rd Ed. 2011) (Berger Decl. Ex. 8 at 4) ("Usually replacing *any* with the indefinite article *a* or *an* results in heightened readability with no change in meaning.").

2)  <u>Court Decisions Confirm, "A" And "Any" Have The Same Meaning When Followed By A Restrictive Modifier.</u>

The Federal Circuit has repeatedly found that absent a clear indication that "a" should be singular, the proper construction of the term is to be plural.  As a general rule, the words "a" or "an" in a patent claim carry the meaning of "one or more."  *01 Communique Lab., Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1297 (Fed. Cir. 2012); *TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290, 1303 (Fed. Cir. 2008) ("As a general rule, the words 'a' or 'an' in a patent claim carry the meaning of 'one or more.'"); *N. Am. Vaccine, Inc. v. Am. Cyanamid Co.*, 7 F.3d 1571, 1581 (Fed. Cir. 1993) (citing Robert C. Faber, *Landis on Mechanics of Patent Claim Drafting* 531 (3d ed. 1990) for the proposition that "In a claim, the indefinite article A or AN connotes 'one or more'").  Further, absent a clear intent to limit the term "a" to "one" in the specification, the term should be construed in the plural.  And "[s]uch clear intent must be shown by the language of the claims

themselves, the specification, or the prosecution history. . . . Nothing . . . shows that the patentees intended to depart from this general rule and specifically limit the scope." *Lamoureux v. AnazaoHealth Corp.*, 669 F. Supp. 2d 227, 258 (D. Conn. 2009).

Outside the patent context, district courts, appellate courts, and the United States Supreme Court have found that the use of "a" and "any" when used before a restrictive modifier (e.g., "in the DSSS signal spectrum") has the same meaning. *See, e.g., United States v. Alabama*, 778 F.3d 926, 933 (11th Cir. 2015) ("Binding precedent from this Circuit affirms our approach to analyzing Congress's word choice. We have repeatedly found in prior cases that an indefinite article was purposefully used as a synonym for the word "any," determining that the context of a statute required us to read "a" or "an" to mean "any" rather than "one."); *Comm'r of Internal Revenue v. Kelley*, 293 F.2d 904, 911-12 (5th Cir. 1961) ("The indefinite article 'a' says in plain language that there may be two or more substantial parts."); *Lee v. Weisman*, 505 U.S. 577, 614 n.2 (1992) (Souter, J., concurring) ("[T]he indefinite article before the word 'establishment' [in the First Amendment] is better seen as evidence that the Clause forbids any kind of establishment.").

Bose's reading of "a frequency" to mean a single frequency is not plausible in light of the specification and file history. Bose has provided no citation to indicate that the specification provides any suggestion that the higher frequency would mean anything different if it was "a higher frequency" or "any higher frequency in the DSS signal spectrum." Though there may be different grammatical changes that could be made to claim 6, in context of the surrounding claim language and the specification, the meaning of such changes remains the same. Thus, claim 6 provides reasonable certainty and is sufficiently definite.

## VI.   CASTLEMORTON'S ALLEGATIONS ESTABLISH DIRECT INFRINGEMENT

Bose's argument that Castlemorton's direct infringement allegations are deficient is premised on the '421 patent being indefinite. Motion at 10 ("critically glosses over the indefinite

language"). Castlemorton has provided ample notice of the infringement claims against Bose and the grounds on which they rest. Castlemorton provided more than 40 pages of pleadings detailing the patent-in-suit, the Bose products accused of infringement, and explanations of why those accused products infringe the '421 patent. Castlemorton's complaint is straightforward and pleads specific facts that put Bose on notice of the products that Castlemorton accuses of infringement. Castlemorton's allegations exceed the minimal "short and plain statement" required by Rule 8(a).

Bose's argument rests solely on a factual issue relating to the meaning of "an frequency," which is procedurally improper for a Rule 12(b)(6) motion to dismiss. In considering a Rule 12(b)(6) motion, Courts "construe[] the complaint liberally in favor of the plaintiff, and takes all facts pleaded in the complaint as true." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009); *see also Parity Networks, LLC v. Cisco Systems*, No. 19-cv-00207-ADA, Dkt. No. 22 (Berger Decl. Ex. 9) at 3 (W.D. Tex. July 26, 2019) ("Notwithstanding Defendant's argument to the contrary, the Court finds that Plaintiff's pleadings are sufficient and that any deficiencies will necessarily be addressed when plaintiff serves its infringement contentions.").

Here, Castlemorton has provided detailed factual allegations showing that the Bose products perform spectrum inversion by "subtracting the DSSS signal from a signal having a higher frequency than an frequency in the DSSS signal spectrum" (Compl. ¶ 81), and Castlemorton identifies the higher signal as being higher than "a spectral range between 2.400-2.4835 GHz." *Id*., ¶ 72. This is more than sufficient.

Bose references two cases that are easily distinguishable. *First*, in *TexasLDPC Inc. v. Broadcom Inc.*, Judge Andrews in the District of Delaware found direct infringement allegations lacking where "Plaintiff has not clearly identified which Broadcom Wi-Fi products it is accusing and has made no effort to compare those products to the asserted claim

elements." 2020 U.S. Dist. LEXIS 46773, at *6 (D. Del. Mar. 18, 2020). In contrast, Castlemorton has clearly identified specific Bose products that infringe (Compl., ¶¶ 56-59), identified the parts of the IEEE 802.11b standard that are infringed (*id.*, ¶ 63), and provided details on how Bose products perform the infringing elements of the standard (*id.*, ¶¶ 64-82).

Bose cites C*hapterhouse, LLC v. Shopify, Inc.*, 2018 U.S. Dist. LEXIS 219072 (E.D. Tex. Dec. 10, 2018) as requiring a heightened pleading standard. Motion at 9. *Chapterhouse* is plainly distinguishable from the case here. In that case, the complaint alleged that the accused product required a third-party app "operated by the user" to be "integrated" with the defendant's separate system to directly infringe. *See* No. 2:18-cv-00300-JRG, Dkt. 1, at ¶¶ 44-45 (E.D. Tex. July 20, 2018) ("The Shopify System is operable to transmit the electronic receipt to a computing device operated by the user. *See, e.g.*, Spently."). Because the *Chapterhouse* complaint relied on a third-party app that was alleged to be operated by a nonparty user, but did not allege that the defendant owned or controlled the app, the Court held that the complaint did not allege that a single entity performed every limitation of the asserted claim. 2018 U.S. Dist. LEXIS 219072, at *9.

## VII. CASTLEMORTON'S INDUCED INFRINGEMENT ALLEGATIONS ARE SUFFICIENT.

Bose argues that, as a matter of law, Castlemorton must allege pre-suit knowledge of a patent-in-suit for a claim of indirect infringement to survive a motion to dismiss. Motion at 11. Bose's argument flouts controlling Federal Circuit precedent and the decisions of district courts throughout the country, including multiple decisions from this Court. *See, e.g., Labyrinth Optical Techs., LLC v. Fujitsu Am., Inc.*, 2013 U.S. Dist. LEXIS 188873, at *10 (C.D. Cal. Aug. 21, 2013) ("The Federal Circuit Has Spoken: Alleging Knowledge From a Complaint in the Same Case Suffices to State a Claim for Post-Complaint Indirect Infringement.") (referring to *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012) (capitalization and emphasis in original)).

The Federal Circuit in *In re Bill of Lading* explicitly held that knowledge as of the time of the complaint suffices for pleading indirect infringement:

> The [] Amended Complaint alleges that Microdea became aware of the '078 patent, at the latest, in March of 2009 when it was served with the complaint. . . . On the basis of these factual allegations, R+L alleges that it is reasonable to infer that Microdea intends to induce its customers to infringe the '078 patent. . . . We conclude, therefore, that the district court erred when it dismissed the [] Amended Complaint.

*In re Bill of Lading*, 681 F.3d at 1345. As one court explained, the "Federal Circuit therefore held that knowledge of the asserted patent from a complaint in the same case is sufficient to meet the knowledge requirement of indirect infringement." *Labyrinth Optical*, 2013 U.S. Dist. LEXIS 188873, at *13. *See also Eon Corp. IP Holdings, LLC v. Sensus USA, Inc.,* No. C-12-1011 EMC, 2012 U.S. Dist. LEXIS 141965, at *1 (N.D. Cal. Oct. 1, 2012) ("Though the claims for indirect infringement both require knowledge of the patent, the Federal Circuit has recently held that post-filing knowledge is sufficient to meet this requirement.").

This Court has found post-suit knowledge sufficient. In *Frac Shack Inc., v. AFD Petroleum (Texas) Inc.*, No. 7:19-cv-00026-DC, Dkt. No. 57 (Berger Decl. Ex. 10), slip op. at 4 (W.D. Tex. June 13, 2019) (Albright, J.) this Court explained:

> The Amended Complaint specifically recites that all Defendants have had knowledge of how the use of the Octofueler infringes the '906 Patent from at least the service of the Original Complaint . . . and despite such knowledge, GES continues to infringe the '906 Patent. . . . [T]he Court finds that these allegations are sufficient and DENIES Defendant GES's motion to dismiss Plaintiff's claims of indirect infringement.") (emphasis in original).

Further, in *Parity Networks, LLC v. Cisco Sys., Inc.*, No. 6:19-cv-00209, Dkt. 21 (Berger Decl. Ex. 9), slip op., at 4 (W.D. Tex. July 26, 2019), this Court explained that both induced infringement and contributory infringement claims "include a 'knowledge of the patent' element—whether it be pre-suit *or post-suit knowledge*." Slip op. at 4 (emphasis added).

Other courts in this District agree. For example, in *Meetrix IP, LLC v. Cisco Sys., Inc.*, 2018 U.S. Dist. LEXIS 225719, at *7 (W.D. Tex. Nov. 30, 2018), the court explained that "Meetrix's complaint sufficiently alleges post-suit knowledge of the Asserted Patents" because

"[e]ach count of the complaint alleges indirect infringement 'at least since [Cisco's] receipt of notice and/or the filing of the Original Complaint.'" (citing *In re Bill of Lading*, 681 F.3d at 1344-46, and *Patent Harbor, LLC v. Dream Works Animation SKG, Inc.*, 2012 U.S. Dist. LEXIS 114199 (E.D. Tex. Jul. 27, 2012)) (denying motion to dismiss indirect infringement claims because plaintiff sufficiently pled post-suit knowledge of asserted patents).

The plain import of the Federal Circuit's decision in *In re Bill of Lading* and the vast weight of authority on this issue shows that Castlemorton's pleading of Bose's knowledge of the '421 patent as of the time of the Complaint is proper.

By contrast, Bose provides no compelling authority to support its position. In fact, Bose advances arguments that are plainly incorrect. First, Bose argues that "[a]s this district has stated . . such knowledge is insufficient to plead the requisite knowledge for indirect infringement." Motion at 12 (citing *Aguirre v. Powerchute Sports, LLC*, 2011 U.S. Dist. LEXIS 65003 (W.D. Tex. June 17, 2011)). That is incorrect. The *Aguirre* case was decided before *In re Bill of Lading* and relies on a Delaware decision that the author later disavowed. *Aguirre* relies on *Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349 (D. Del. 2010) (Robinson, J.). *Aguirre*, 2011 U.S. Dist. LEXIS 65003, at *11 n.24. Less than a year and a half after authoring *Xpoint*, Judge Robinson reversed herself on this exact point in *Apeldyn Corp. v. Sony Corp.*, 852 F. Supp. 2d 568, 574 n.8 (D. Del. 2012) (Robinson, J.):

> The court acknowledges that this result is inconsistent with its prior decisions in *Xpoint* . . . Given the ease of amendment, the limitation of damages to post-knowledge conduct, and the interests of judicial economy, the court finds that **the better reasoning is to allow a complaint that satisfies Rule 8 to proceed to discovery rather than dismissing it for lack of pre-filing knowledge**.

(emphasis added). *Aguirre* should not be considered good law on this issue.

Castlemorton's Complaint details the specific functionalities accused of infringing the '421 patent. Compl., ¶¶ 64-82. The Complaint also accuses Bose's customers and end users of directly

infringing the '421 patent, and that Bose knew those acts infringed because it continued to provide documentation and training materials that cause customers to infringe. Compl., ¶ 88. The Complaint cites product documents and customer support webpages which Bose uses to teach its customers how to use the accused devices in an infringing manner.

Castlemorton's allegations are sufficient in light of "the low threshold for proving concepts like knowledge and intent." *Yeti Coolers, LLC v. RTIC Coolers, LLC*, 2016 U.S. Dist. LEXIS 94452, at *15 (W.D. Tex. July 19, 2016) (collecting cases). Courts routinely find claims of induced infringement plausible on similar showings. *See, e.g.*, *Motiva Patents, LLC v. Sony Corp*., 408 F. Supp. 3d 819, 831-32 (E.D. Tex. 2019) ("Having alleged that those classes of evidence contain instructions on how to infringe—allegations the Court must take as true.").

Bose also relies on *Affinity Labs of Tex., LLC v. Toyota Motor N. Am., Inc.*, 2014 U.S. Dist. LEXIS 90379, at *19 (W.D. Tex. May 12, 2014), but that case demonstrates that Castlemorton's Complaint properly pleads induced infringement. Bose ignores that the plaintiff in *Affinity Labs* "does not specify how the marketing and selling activities of Toyota actually induced third-parties to infringe the Asserted Patents." *Id.* at * 19. The *Affinity Labs* decision explains, "Where a plaintiff can establish that a defendant knew certain uses constituted patent infringement . . . such as advertising an infringing use or instructing how to engage in an infringing use, shows an affirmative intent that the product be used to infringe.'" *Id.* at *18-19. Castlemorton's Complaint meets the requirements laid out in *Affinity Labs*. Courts routinely find allegations of specific intent to induce infringement far less detailed than Castlemorton's sufficient. *See Solutions L.L.C. v. Amazon.com, Inc*., 170 F. Supp. 3d 928, 936-37 (E.D. Tex. Mar. 16, 2016).

## VIII. CONCLUSION

Castlemorton respectfully requests that the Court deny Bose's motion.

Dated: April 13, 2020

Respectfully submitted,

*/s/  Daniel P. Hipskind*

Dorian S. Berger (CA SB No. 264424)
Daniel P. Hipskind (CA SB No. 266763)
BERGER & HIPSKIND LLP
9538 Brighton Way, Ste. 320
Beverly Hills, CA 90210
Telephone: 323-886-3430
Facsimile: 323-978-5508
E-mail: dsb@bergerhipskind.com
E-mail: dph@bergerhipskind.com

*Attorneys for Plaintiff*
*Castlemorton Wireless, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of April, 2020 I electronically filed the foregoing Notice of Readiness for Scheduling Conference with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing upon Counsel of Record.


_/s/  Daniel P. Hipskind_____