# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| CASTLEMORTON WIRELESS, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 6:20-cv-00029-ADA |
| BOSE CORPORATION, | § § § | |
| Defendant. | § § § | |

## BOSE CORPORATION'S MOTION TO DISMISS
## PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

**TABLE OF CONTENTS**
I. INTRODUCTION ..................................................................................................1

II. LEGAL STANDARD .............................................................................................2

III. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR RELIEF BECAUSE ASSERTED CLAIM 6 IS INDEFINITE ....................2

    A. The '421 Patent Does Not Warrant Judicial Correction .........................................3

        1. The Prosecution History May Not Be Used to Determine Whether There Is an Obvious Error .......................................................................3

        2. Any Purported Correction Is Open to Reasonable Debate ..........................4

    B. The Term "An Frequency" Is Indefinite ................................................................7

IV. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM OF PATENT INFRINGEMENT BECAUSE IT DOES NOT ADDRESS THE "AN FREQUENCY" LANGUAGE IN CLAIM 6 ......................................................9

V. THE INDUCED INFRINGEMENT CLAIMS SHOULD BE DISMISSED ....................11

    A. The Complaint Fails to Plead Pre-Suit Knowledge of the '421 Patent or Any Pre-Suit Knowledge of Alleged Infringement ...............................................11

    B. The Complaint Fails to Plead Facts Plausibly Supporting that Bose Had Specific Intent to Encourage Others' Infringement of the Patent-in-Suit .............12

VI. CONCLUSION ......................................................................................................14

# TABLE OF AUTHORITIES

**Cases** Page(s)

*Advanced Tech. Incubator, Inc. v. Sharp Corp.*,
   No. 2:07-CV-468, 2009 U.S. Dist. LEXIS 109173 (E.D. Tex. Jun. 26, 2009)...............4, 7

*Affinity Labs of Tex., LLC v. Toyota Motor N. Am., Inc.*,
   No. W:13-CV-365, 2014 U.S. Dist. LEXIS 90379 (W.D. Tex. May 12, 2014).........13, 14

*Aguirre v. Powerchute Sports, LLC*,
   No. SA-10-CV-0702, 2011 U.S. Dist. LEXIS 65003 (W.D. Tex. Jun. 17, 2011) ............12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................................2, 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................................................................2

*Brandywine Commc'ns Techs., LLC v. Casio Comput. Co.*,
   912 F. Supp. 2d 1338 (M.D. Fla. 2012)..............................................................................12

*Chapterhouse, LLC v. Shopify, Inc.*,
   No. 2:18-CV-00300, 2018 U.S. Dist. LEXIS 219072 (E.D. Tex. Dec. 10, 2018)..............9

*Commil USA, LLC v. Cisco Sys.*,
   575 U.S. 632, 135 S. Ct. 1920 (2015)...................................................................................11

*ContentGuard Holdings, Inc. v. Amazon.com, Inc.*,
   No. 2:14-CV-61, 2015 U.S. Dist. LEXIS 34667 (E.D. Tex. Mar. 20, 2015)......................4

*Dodots Licensing Sols. LLC v. Lenovo Holding Co.*,
   No. 18-098, 2018 U.S. Dist. LEXIS 213202 (D. Del. Dec. 19, 2018).............................13

*DSU Med. Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006) ...........................................................................................12

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011) ..............................................................................................................11

*Group One, Ltd. v. Hallmark Cards, Inc.*,
   407 F.3d 1297 (Fed. Cir. 2005) .........................................................................................3, 8

*H-W Tech., L.C. v. Overstock.com, Inc.*,
   758 F.3d 1329 (Fed. Cir. 2014) .........................................................................................3, 6

*Imperium (IP) Holdings, Inc. v. Apple, Inc.*,
    920 F. Supp. 2d 747 (E.D. Tex. 2012)..................................................................................4, 7

*Joao Control & Monitoring Sys., LLC v. Protect Am., Inc.*,
    No. 1-14-CV-134, 2015 U.S. Dist. LEXIS 74262 (W.D. Tex. Mar. 24, 2015) .................12

*Karlin Tech., Inc. v. Surgical Dynamics, Inc.*,
    177 F.3d 968 (Fed. Cir. 1999) ..........................................................................................6

*LG Elecs., Inc. v. Quanta Comput., Inc.*,
    566 F.Supp.2d 910 (W.D. Wis. 2008) ..............................................................................4

*Light Transformation Techs. LLC v. Lighting Sci. Grp. Corp.*,
    No. 2:12-cv-826, 2014 U.S. Dist. LEXIS 94090 (E.D. Tex. Jul. 10, 2014)........................8

*Mirror Worlds, LLC v. Apple Inc.*,
    692 F.3d 1351 (Fed. Cir. 2012) ......................................................................................14

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014) ......................................................................................................7, 8

*Novo Indus., L.P. v. Micro Molds Corp.*,
    350 F.3d 1348 (Fed. Cir. 2003) .....................................................................................3, 4

*SRI Int'l v. Matsushita Elec. Corp.*,
    775 F.2d 1107 (Fed. Cir. 1985) ........................................................................................6

*Superior Indus., LLC. v. Thor Global Enters. Ltd*,
    700 F.3d 1287 (Fed. Cir. 2012) ......................................................................................14

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
    789 F.3d 1335 (Fed. Cir. 2015) ........................................................................................8

*TexasLDPC Inc. v. Broadcom Inc.*,
    No. 18-1966, 2020 U.S. Dist. LEXIS 46773 (D. Del. Mar. 18, 2020)...............................9

*VLSI Tech., LLC v. Intel Corp.*,
    No. 6:19-CV-000254, 2019 U.S. Dist. LEXIS 155285 (W.D. Tex. Aug. 9, 2019) ..........11

**Statutes**                                                                     **Page(s)**

35 U.S.C. § 112(b)............................................................................................................7

I.      **INTRODUCTION**

Defendant Bose Corporation ("Bose") respectfully moves to dismiss the Complaint of Plaintiff Castlemorton Wireless, LLC ("Castlemorton") for alleged infringement of U.S. Patent No. 7,835,421 ("the '421 patent"). Castlemorton's Complaint fails in at least three ways.[1]

*First*, the only patent claim identified in the Complaint—claim 6—is indefinite. This claim requires, among other steps, "subtracting the DSSS signal from a signal having a higher frequency than *an frequency* in the DSSS signal spectrum to produce DSSS signal frequency spectrum inversion." However, the term "*an frequency*" in claim 6 is indefinite. Indeed, it could be read as either "*a* frequency" (if the incorrect indefinite article was used) or "*any* frequency" (if misspelled), which substantially impacts the claim. There is no basis for the Court to "correct" this term, and, without correction, the term "an frequency" is indefinite. Although Castlemorton and its predecessor had 10 years to correct this error with the U.S Patent and Trademark Office after the patent issued in 2010, they failed to do so. This case simply cannot proceed with this error in the claim. Indeed, it would be a massive waste of the Court's and parties' resources to proceed to a claim construction hearing on all the terms in the patent because the indefiniteness of the term "an frequency" in claim 6 is a gating issue in this case.

*Second*, Castlemorton critically glosses over the indefinite language "an frequency" in claim 6 when addressing the alleged infringement of Bose's accused products in the Complaint. Thus, it appears that Castlemorton recognizes the indefiniteness of claim 6 and reads the term "an

---

[1] Bose notes that there is a validity challenge to the '421 patent under Section 101 in the following co-pending cases in the District of Delaware: *Castlemorton Wireless, LLC v. ALE USA, Inc.*, No. 1:20-cv-00130 (D. Del.); *Castlemorton Wireless, LLC v. Cox Communications, Inc.*, No. 1:20-cv-00060 (D. Del.); *Castlemorton Wireless, LLC v. Datto, Inc.*, No. 1:20-cv-00058 (D. Del.). To streamline the issues for resolution in this case, and because Bose understands it is generally the preference of this Court to address Section 101 issues at a later stage of the case, the present motion focuses on Castlemorton's pleading deficiencies. Should the District of Delaware hold the '421 patent invalid, Bose respectfully submits that holding would apply and similarly result in dismissal of all of Castlemorton's claims in the present case against Bose. Bose expressly reserves all rights to challenge the validity of the '421 patent under all applicable grounds in accordance with 35 U.S.C. §101 *et seq.*

frequency" out of the claim. Because Castlemorton has glossed over the term "an frequency" in attempting to set forth its infringement claim, Castlemorton has failed to adequately state a claim of patent infringement.

*Third*, Castlemorton's indirect infringement claims are deficient as a matter of law. Indeed, Castlemorton fails to allege that Bose had pre-suit knowledge of the existence of the '421 patent or that Bose had pre-suit knowledge of its alleged infringement of the '421 patent. Further, Castlemorton fails to plead facts plausibly supporting that Bose had the required "specific intent" to induce infringement of the '421 patent.

Accordingly, Castlemorton's Complaint should be dismissed.

## II. LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard is not met unless the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR RELIEF BECAUSE ASSERTED CLAIM 6 IS INDEFINITE

The term "an frequency" in claim 6—the only asserted claim in the case—is indefinite, and accordingly, the complaint should be dismissed for failure to state a claim for relief. There is no basis for the Court to "correct" the term, and, without correction, the term "an frequency" is indefinite. This case simply cannot proceed with this error in the claim.

### A. The '421 Patent Does Not Warrant Judicial Correction.

The Federal Circuit has concluded that district courts have limited authority to correct patent claims. Specifically, a district court may not correct an error unless it is obvious from the face of the patent that there is an error. *See H-W Tech., L.C. v. Overstock.com, Inc.*, 758 F.3d 1329, 1333 (Fed. Cir. 2014) Even where there is an obvious error, a district court may correct it only where there is no reasonable dispute about what the correction should be: "A district court can correct a patent only if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003). At the very least, any purported correction is open to reasonable debate. As such, Castlemorton cannot establish that the Court should "correct" the claim term.

#### 1. The Prosecution History May Not Be Used to Determine Whether There Is an Obvious Error.

It is well-settled that to be considered for judicial correction, there must be an error that is obvious on the face of the patent. *See H-W Tech.*, 758 F.3d at 1333. The Court may not refer to the prosecution history to determine whether there is an obvious error: "[T]his court has already deemed evidence of error in the prosecution history alone insufficient to allow the district court to correct the error." *Id.* at 1334 (explaining that the court could not correct an error that was apparent only by referencing the prosecution history and thus found one of the claims indefinite) *see also Group One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1303 (Fed. Cir. 2005) ("The error here is not evident on the face of the patent. The prosecution history discloses that the missing language was required to be added by the examiner as a condition for issuance, but one cannot discern what language is missing simply by reading the patent. The district court does not have authority to correct the patent in such circumstances.").

### 2. Any Purported Correction Is Open to Reasonable Debate.

Even if there were an error that is obvious on the face of the patent, the proper correction is open for debate. Even in cases of obvious errors, "[a] district court can correct a patent only if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." *Novo Indus.*, 350 F.3d at 1357.

Courts have repeatedly noted that meeting the *Novo Industries* standard is "nearly impossible." *See, e.g., Imperium (IP) Holdings, Inc. v. Apple, Inc.*, 920 F. Supp. 2d 747, 757 (E.D. Tex. 2012) (quoting *LG Elecs., Inc. v. Quanta Comput., Inc.*, 566 F.Supp.2d 910, 913 (W.D. Wis. 2008); *ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, No. 2:14-CV-61, 2015 U.S. Dist. LEXIS 34667, at *98 (E.D. Tex. Mar. 20, 2015) (same); *Advanced Tech. Incubator, Inc. v. Sharp Corp.*, No. 2:07-CV-468, 2009 U.S. Dist. LEXIS 109173, at *56 (E.D. Tex. Jun. 26, 2009) (same).

Castlemorton cannot meet the "nearly impossible" standard because it cannot demonstrate that there is only a single potential correction of the term "an frequency." Courts have refused to correct a claim where there are competing potential corrections as evidenced by multiple proposed corrections. *See Novo Indus.*, 350 F.3d at 1357 (refusing to correct "a" to "and" because other possibilities for correction existed).

Here, assuming that the inclusion of the term "an frequency" was an error, there are multiple potential corrections. Indeed, the term could be read as "*a* frequency" (if the incorrect indefinite article was used) or "*any* frequency" (if misspelled), which substantially impacts the claim. If it is read as "*a* frequency", the claim would require the subtraction of the DSSS signal from a signal having a higher frequency than a frequency (i.e., just *one* frequency) in the DSSS signal spectrum. But if it is "*any* frequency", the claim would require the subtraction of the DSSS

signal from a signal having a higher frequency than any frequency (i.e., *all* of the frequencies) in the DSSS signal spectrum.

As an initial note, the term "an frequency" does not appear in the specification, and for that matter, the terms "a frequency" or "any frequency" also do not appear in the specification (although the terms "frequency" and "frequencies" are used). Moreover, the multiple possible corrections of the term "an frequency" are not resolved by the specification. For example, the following passage from the '421 patent describes an example inverter configuration:

> The arrangement described in FIGS. 1 and 2 operates as follows. A symmetrical DSSS signal applied to the input terminal 1 is filtered and fed to the inverter 3 and delay unit 4 in parallel. In the inverter 3, the signal is filtered once more and multiplied or mixed with the output of the oscillator 11 by the multiplier 12. The oscillator frequency is arranged to be higher than the largest frequency in the DSSS signal of interest, and mixing produces sum and difference frequencies.

('421 patent, column 2, lines 31-38.)

As described above, the inverter receives a DSSS signal of interest. By definition, a DSSS signal is spread over a spectrum of frequencies. This DSSS signal is "multiplied or mixed" by the output of an oscillator. The oscillator frequency is recited as "higher than the largest frequency of the DSSS signal of interest". "The largest frequency" is a single frequency of the spectrum of the DSSS signal, thus corresponding to "*a* frequency." However, "higher than the largest frequency" also connotes that the oscillator frequency may be higher than all the frequencies in the DSSS signal spectrum, thus corresponding to "*any* frequency." Therefore, this passage fails to provide clarity regarding the multiple possible corrections for the term "*an* frequency" in claim 6.

In a further example, the '421 patent describes an example signal processing system:

> Referring now to FIG. 4, there is shown a block diagram of a more detailed version of the circuit described with reference to FIGS. 1, 2 and 3. An antenna 20 is arranged to receive signals in the 4.0±0.02 GHz band, and to supply the signals to a mixer 21 connected to a 4.07 GHz stable microwave oscillator 22.

('421 patent, column 3, lines 11-16.)

As described above, the system receives, via an antenna, signals in the 4.0 ± 0.02 GHz frequency band (i.e., 3.98 to 4.02 GHz). The received signal is provided to a mixer connected to a 4.07 GHz oscillator. In this example, the frequency of the oscillator is higher than both "*a* frequency" of the received signal (for example, 3.99 GHz), as well as "*any* frequency" of the received signal (3.98 GHz to 4.02 GHz). Therefore, this section also fails to provide clarity regarding the multiple possible corrections for the indefinite term "*an* frequency," as both "*a* frequency" and "*any* frequency" could meet the configuration described above.

Although claim 1 uses the language "any frequency," the inclusion of that language in one claim does not necessitate that the limitation should be included in all other claims. *See SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1122 (Fed. Cir. 1985) ("It is settled law that when a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim in determining either validity or infringement."). Indeed, as the Federal Circuit stated in *H-W Tech.*, "[a]lthough other claims do contain the missing limitation, the inclusion of that limitation in one claim does not necessitate, or even fairly indicate, that the limitation should be included in all other claims." 758 F.3d at 1333. Moreover, different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope. *Karlin Tech., Inc. v. Surgical Dynamics, Inc.,* 177 F.3d 968, 971-72 (Fed. Cir. 1999) (explaining "the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope.").

Aside from the fact that there are multiple potential corrections, other factors support the conclusion that the "nearly impossible" standard from *Novo Industries* is not met here. Castlemorton and its predecessor did not request correction despite the patent having been issued

- 6 -

since 2010. This weighs heavily against a finding that the claim is subject to judicial correction. In *Imperium (IP) Holdings*, for example, the court refused to correct a patent to change terms from plural to singular under similar circumstances as this case: "Judicial correction would not be appropriate here because Plaintiff has not requested it, and because the apparent discrepancy is subject to reasonable debate, is more significant than an obvious misspelling, and appears four times in Claim 13." 920 F.Supp.2d at 757; *see also Advanced Tech.*, 2009 U.S. Dist. LEXIS 109173, at *55-56 (refusing to correct "the" to "an" in the claim).

Because there is reasonable debate about any potential correction, this is not a case in which judicial correction is appropriate. Thus, the term must be interpreted as written.

**B.     The Term "An Frequency" Is Indefinite.**

As written, the term "an frequency" is indefinite. Under 35 U.S.C. § 112(b), "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." The Supreme Court has made clear that this mandates that "claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). It is insufficient that "a court can ascribe *some* meaning to a patent's claims." *Id.* at 911.

Upon reviewing the claims and specification, one is left to wonder whether the term "*an* frequency" should be: (1) "*a* frequency," in which case a chip practicing the claimed method would need to do subtract the DSSS signal from a signal having a higher frequency than a frequency (i.e., just *one* frequency) in the DSSS signal spectrum; or (2) "*any* frequency," in which case a chip practicing the claimed method would need to subtract the DSSS signal from a signal having a higher frequency than any frequency (i.e., *all* of the frequencies) in the DSSS signal spectrum.

As discussed above, the specification does not provide any clarity about the particular meaning of the term "*an* frequency," which could be read as either "*a* frequency" or "*any* frequency." Where there are multiple possible corrections of a term and the intrinsic record does not provide a reasonable basis to decide between them, the claim is indefinite. *See Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341 (Fed. Cir. 2015) (concluding that patent was indefinite because it failed to teach which of three methods of measuring "molecular weight" should be used); *Nautilus*, 572 U.S. at 911 & n.8 (referring favorably to lower court decision concluding that term was indefinite when it might mean several different things); *Light Transformation Techs. LLC v. Lighting Sci. Grp. Corp.*, No. 2:12-cv-826, 2014 U.S. Dist. LEXIS 94090, at *31 (E.D. Tex. Jul. 11, 2014) (concluding that term "the axis of light direction" was indefinite when the specification failed to provide any information about which of the multiple possible axes was referred to).

Put simply: because the '421 patent does not provide any clarity about the term "*an* frequency," it is impossible to choose between multiple potential corrections of the claim term. The Court could plausibly pick either potential correction and would be doing so without any assistance from the patent itself or the prosecution history.

This case cannot proceed with this error in the claim. Indeed, it would be a massive waste of the Court's and parties' resources to proceed to a claim construction hearing on all the terms in the patent because the indefiniteness of the term "an frequency" in claim 6 is a gating issue in this case. Castlemorton could have sought a correction from the U.S. Patent and Trademark Office before bringing this suit. *Group One*, 407 F.3d at 1302 ("While the error was that of the PTO, so far as the record reveals, [plaintiff] has failed to seek correction from the PTO."). Having failed to correct the error in asserted claim 6, the Complaint should be dismissed.

IV. **THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM OF PATENT INFRINGEMENT BECAUSE IT DOES NOT ADDRESS THE "AN FREQUENCY" LANGUAGE IN CLAIM 6**

Not only is asserted claim 6 indefinite for the reasons discussed above, Castlemorton critically glosses over the indefinite language "an frequency" in claim 6 when addressing the alleged infringement of Bose's accused products. Thus, the Complaint should be dismissed for failure to state a claim for relief. *See, e.g., TexasLDPC Inc. v. Broadcom Inc.*, No. 18-1966, 2020 U.S. Dist. LEXIS 46773, at *6 (D. Del. Mar. 18, 2020) (dismissing allegations against accused Wi-Fi products because plaintiff's "allegations as to the Wi-Fi products do not meet the minimal requirements of Federal Circuit precedent."); *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-CV-00300, 2018 U.S. Dist. LEXIS 219072, at *2 (E.D. Tex. Dec. 10, 2018) (dismissing direct infringement claim for failing to lay out how the accused products met the text of the claim).

Asserted claim 6 requires, among other steps, "subtracting the DSSS signal from a signal having a higher frequency than *an frequency* in the DSSS signal spectrum to produce DSSS signal frequency spectrum inversion." (emphasis added.) The only paragraph in the Complaint that substantively addresses the "subtracting" step of claim 6 is Paragraph 76:

> 76. **The Bose '421 Products perform the step of subtracting the spread spectrum signal from a signal with a higher frequency than the DSSS signal spectrum**. For example, the Bose '421 Products contain functionality for a processing gain of at least 10 dB. This is performed by the Bose '421 Products by chipping the baseband signal at 11 MHz with an 11-chip code.

Complaint at ¶ 76 (emphasis added).

However, instead of alleging that the accused Bose products meet the *actual* language of claim 6—"subtracting the DSSS signal from a signal having a higher frequency than an frequency in the DSSS signal spectrum to produce DSSS signal frequency spectrum inversion"— Castlemorton glosses over the indefiniteness of claim 6 by only alleging that the accused products

"perform the step of subtracting the spread spectrum signal from a signal with a higher frequency than the DSSS signal spectrum." Notably absent from this allegation is any reference to the term "an frequency" in claim 6. Thus, it appears that Castlemorton recognizes the indefiniteness of claim 6 and reads the term "an frequency" out of the claim. A side-by-side comparison of Castlemorton's allegation in Paragraph 76 is shown below in relation to the language of claim 6:

| Paragraph 76 | "Subtracting" Step of Claim 6 |
| --- | --- |
| "subtracting the spread spectrum signal from a signal with a higher frequency than the DSSS signal spectrum" | "subtracting the DSSS signal from a signal having a higher frequency than an frequency in the DSSS signal spectrum to produce DSSS signal frequency spectrum inversion" |

The only instance in the entire 45-page Complaint where Castlemorton references the term "an frequency" is in Paragraph 81:

> 81. Any implementation of the 802.11b and/or 802.11g standard would infringe the '421 patent as every possible implementation of the standard requires: detecting the carrier frequency of a DSSS signal; **subtracting the DSSS signal from a signal having a higher frequency than <u>an frequency</u> in the DSSS signal spectrum to produce DSSS signal frequency spectrum inversion**; correlating the inverted and non-inverted DSSS signals at substantially zero relative time delay; and identifying the said carrier frequency from the correlation signal.

Complaint at ¶ 81 (emphasis added).

But Paragraph 81 merely parrots the literal elements of the claim without any alleged facts to support a plausible claim for relief. Such "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" are not enough to survive a motion to dismiss. *Iqbal*, 556 U.S. at 663 (2009).

Because Castlemorton has glossed over the term "an frequency" in attempting to set forth its infringement claim, Castlemorton has failed to adequately state a claim of patent infringement and the Complaint should be dismissed.

V. **THE INDUCED INFRINGEMENT CLAIMS SHOULD BE DISMISSED**

Castlemorton's indirect infringement claims are deficient as a matter of law and should be dismissed. First, Castlemorton fails to allege that Bose had pre-suit knowledge of the existence of the '421 patent or that Bose had pre-suit knowledge of its alleged infringement of the '421 patent. Second, Castlemorton fails to plead facts plausibly supporting that Bose had the required "specific intent" to induce infringement of the '421 patent.

A. **The Complaint Fails to Plead Pre-Suit Knowledge of the '421 Patent or Any Pre-Suit Knowledge of Alleged Infringement.**

Claims for induced infringement require "knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys.,* 575 U.S. 632, 135 S. Ct. 1920, 1926 (2015) *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011) (indirect infringement requires "knowledge of the existence of the patent that is [allegedly] infringed" and "knowledge that the induced acts constitute patent infringement.").

Castlemorton does not allege that Bose had pre-suit knowledge of the '421 patent and also fails to adequately plead willful blindness. This Court faced similar facts in *VLSI Tech., LLC v. Intel Corp.,* in which the Court dismissed indirect infringement claims because the plaintiff failed to plead pre-suit knowledge of the patents. No. 6:19-CV-000254, 2019 U.S. Dist. LEXIS 155285, at *3-4 (W.D. Tex. Aug. 6, 2019) (dismissing without prejudice indirect infringement claims with no allegation of actual knowledge and insufficient facts to support allegations of willful blindness).

Castlemorton fails to plead knowledge by Bose that it was allegedly infringing the '421 patent. The Supreme Court has made clear that to demonstrate induced infringement "requires proof the defendant knew the acts were infringing." *Commil*, 575 U.S. 632, 135 S. Ct. at 1928. This is a separate requirement from knowledge of the patent itself. *See Id.* at 1926 (rejecting the argument that "only knowledge of the patent is required" for indirect infringement). Thus, a party

cannot be liable for induced infringement if "he did not know the acts were infringing." *Id.* at 1928. In short, Castlemorton provides no allegations supporting *knowledge of infringement* of the '421 patent. Therefore, Castlemorton fails to plead a cause of action for induced infringement.

"The weight of authority addressing the knowledge required for indirect infringement, especially following the Supreme Court's decision in *Global-Tech*, requires a plaintiff to allege that defendant had pre-suit knowledge of the patents-in-suit." *Brandywine Commc'ns Techs., LLC v. Casio Comput. Co.*, 912 F. Supp. 2d 1338, 1345 (M.D. Fla. 2012). As this District has stated, "[t]o the extent [Plaintiff] relies on knowledge of [Plaintiff's] patent after the lawsuit was filed, such knowledge is insufficient to plead the requisite knowledge for indirect infringement." *Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702, 2011 U.S. Dist. LEXIS 65003, at *9 (W.D. Tex. Jun. 17, 2011).

    **B.**    **The Complaint Fails to Plead Facts Plausibly Supporting that Bose Had Specific Intent to Encourage Others' Infringement of the Patent-in-Suit.**

"To properly state a claim for induced infringement, a complaint must plead facts that plausibly show that the defendant has specific intent to cause another party's direct infringement and knew that the other party's acts constituted infringement." *Joao Control & Monitoring Sys., LLC v. Protect Am., Inc.*, No. 1-14-CV-134, 2015 U.S. Dist. LEXIS 74262, at *13 (W.D. Tex. Mar. 24, 2015). As the Federal Circuit has held, specific intent necessarily "requires more than just intent to cause the acts that produce direct infringement. Beyond that threshold knowledge, the inducer must have an affirmative intent to cause direct infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (*en banc* review of intent requirement).

    Here, Castlemorton's induced infringement claim rest on the following allegation:

> Bose intended to induce patent infringement by third-party customers and users of the Bose '421 Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement. Bose specifically intended and was aware that the normal and

- 12 -

customary use of the accused products would infringe the '421 patent. Bose performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '421 patent and with the knowledge that the induced acts would constitute infringement. For example, Bose provides the Bose '421 Products that have the capability of operating in a manner that infringe one or more of the claims of the '421 patent, including at least claim 6, and Bose further provides documentation and training materials that cause customers and end users of the Bose '421 Products to utilize the products in a manner that directly infringe one or more claims of the '421 patent. By providing instruction and training to customers and end-users on how to use the Bose '421 Products in a manner that directly infringes one or more claims of the '421 patent, including at least claim 6, Bose specifically intended to induce infringement of the '421 patent. On information and belief, Bose engaged in such inducement to promote the sales of the Bose '421 Products, *e.g.*, through Bose user manuals, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '421 patent. Accordingly, Bose has induced and continues to induce users of the accused products to use the accused products in their ordinary and customary way to infringe the '421 patent, knowing that such use constitutes infringement of the '421 patent.

Complaint ¶¶ 88. These are the type of generic allegations that have been found legally insufficient in this District to allege specific intent. *See, e.g., Affinity Labs of Tex., LLC v. Toyota Motor N. Am., Inc.*, No. W:13-CV-365, 2014 U.S. Dist. LEXIS 90379, at *18 (W.D. Tex. May 12, 2014) ("unsubstantiated assertions do not adequately support the more demanding specific intent requirement for a finding of induced infringement").

To the extent that Castlemorton argues that allegations of specific intent can be found in footnote 28 of the Complaint because those allegations reference certain Bose advertising and promotional material, courts routinely hold that citation to the existence of product advertising and promotion does not itself allege facts plausibly showing specific intent to induce infringement, absent the identification of "any particular statement or material that plausibly suggests Defendants intend to induce infringement of the Patents-in-Suit." *Dodots Licensing Sols. LLC v. Lenovo Holding Co.,* No. 18-098, 2018 U.S. Dist. LEXIS 213202, at *13 (D. Del. Dec. 19, 2018) (mere citations to websites is insufficient to plead specific intent).

In the Complaint, any mapping from the advertising to the performance of the claims is notably absent. Without such mapping, Castlemorton only asserts that Bose advertises and supports its products—a generic allegation that does not plead any specific intent to induce infringement. *See Affinity Labs*, 2014 U.S. Dist. LEXIS 90379, at *19 (alleging that defendant's advertisements "induced its customers to purchase its vehicles" fails to allege how defendant "induced its customers to use the vehicles in a manner that would violate the Asserted Patents").

Moreover, according to the Federal Circuit, "excerpts from user manuals as evidence of underlying direct infringement by third parties of products that can be used in a non-infringing manner are by themselves insufficient to show the predicate acts necessary for inducement of infringement." *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1360 (Fed. Cir. 2012). Further, "[w]hen manuals only teach 'customers each step of the claimed method in isolation,' but not 'all the steps of the claimed method together,' the manuals alone cannot support infringement." *Id.*

Castlemorton was required to plead specific facts demonstrating that Bose induced another's direct infringement and possessed the specific intent to encourage the third party to infringe, but failed to do so. *Superior Indus., LLC. v. Thor Global Enters. Ltd.*, 700 F.3d 1287, 1296 (Fed. Cir. 2012 (affirming dismissal of inducement claim that failed to allege "any facts to support a reasonable inference that [the alleged infringer] specifically intended to induce infringement . . . or that it knew it had induced acts that constitute infringement.").

Accordingly, Castlemorton's allegations of induced infringement should be dismissed.

## VI. CONCLUSION

Because claim 6—the only asserted patent claim—is indefinite, because the Complaint critically glosses over the indefinite language "an frequency" in claim 6 in addressing the alleged infringement of the accused products, and because the indirect infringement claims are deficient,

Bose respectfully requests this Court grant its motion to dismiss the Complaint in its entirety under Federal Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Dated: March 30, 2020

Respectfully Submitted,

/s/ Jeremy P. Oczek
Jeremy P. Oczek (admitted *pro hac vice*)
NY Bar No. 4425930 / MA Bar No. 647509
BOND, SCHOENECK & KING, PLLC
200 Delaware Avenue, Suite 900
Buffalo, NY 14202-2107
(716) 416-7037 –Telephone
(716) 416-7337 – Facsimile
jpoczek@bsk.com

Stacey V. Reese
TX Bar No. 24056188
Stacey V. Reese Law PLLC
910 West Avenue, Suite 15
Austin, Texas 78701
(512) 535-0742 – Telephone
(512) 233-5917 – Facsimile
stacey@staceyreese.law

COUNSEL FOR DEFENDANT
BOSE CORPORATION

### CERTIFICATE OF SERVICE

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served March 30, 2020, with a copy of this document via the Court's CM/ECF system.

/s/ Jeremy P. Oczek
Jeremy P. Oczek